IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN HARDWARE )
MANUFACTURERS ASSOCIATION, )
a Delaware not-for-profit corporation; )
)
Plaintiff, )
)
vs. ) No. 03 C 9421
)
REED ELSEVIER, INC., a )
Massachusetts corporation, et al., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff American Hardware Manufacturers Association (AHMA) brought this action against defendants Reed Elsevier and two of its divisions (collectively "Reed") and Freeman Decorating Co. and Freeman Decorating Services, Inc., (collectively "Freeman"), initially raising 13 counts, including fraud, conspiracy, breach of contract, and violations of the Lanham Act. AHMA now moves under Fed.R.Civ.P. 15 to amend its complaint. For the following reasons, leave to amend is granted.

AHMA alleges that Reed was contractually obligated to share and disclose all revenue generated by the National Hardware Show (Show), an annual trade show in Chicago that AHMA began sponsoring in 1975. In 1977, Reed's predecessor and AHMA entered into an agreement (Show Agreement) that established terms for Reed's management of the Show. Ruling on defendants' motion to dismiss, we concluded that AHMA's claim that it was entitled to a share of all revenue was not supported by the various amendments to the Show Agreement that it attached to its complaint. Those amendments only addressed the allocation of specific

sources of revenue – not all revenue. AHMA thus failed to identify the relevant agreements that entitled it to all revenue. AHMA instead relied on the assumption that relevant agreements existed and the inference that they created an enforceable interest in all the revenue. The contract claim was accordingly dismissed in part. The breach of fiduciary duty claim was also dismissed in part because AHMA failed to plead that Reed held a dominant position that created a fiduciary relationship due to special circumstances. However, that count was adequate to the extent that it pled a fiduciary relationship created by the Show Agreement's provisions related to exhibitors' contracts. *See* <u>American Hardware Manufacturers Association v. Reed Elsevier</u>, 2004 WL 3363844, *9-12, 2004 U.S. Dist. LEXIS 28007 (N.D. Ill. 2004).

AHMA now moves to add additional facts to its complaint that purportedly show that Reed had contractual and fiduciary obligations to disclose and share with AHMA all revenues related to the Show. These additional allegations also set forth that AHMA retained authority to approve or disapprove of any revenue source disclosed by Reed. Specifically, AHMA now claims that the drafters of the 1977 Show Agreement intended for AHMA to retain authority over the revenue. AHMA acknowledges that the allegations are intended to obviate the need to rely on inference and assumption, and thus remedy the deficiencies in the breach of contract and fiduciary duty counts that led to their dismissal.

Reed and Freeman oppose the motion, with Freeman objecting on the grounds that the proposed amendments implicate AHMA's conspiracy claim. Both defendants argue that AHMA's motion should be denied because the additional allegations would require discovery, and written discovery terminated on April 24, 2006, by order of Magistrate Judge Mason. Freeman also contends that leave to amend should be denied due to AHMA's delay in proposing these amendments, even though AHMA has long known of the underlying facts set

forth in the amendments.

Rule 15(a) specifically provides that leave to amend "shall be freely given when justice so requires." A motion for leave to amend should be granted "in the absence of undue delay, undue prejudice to the party opposing the motion, or futility of the amendment." Eastern Natural Gas Corp. v. ALCOA, 126 F.3d 996, 999 (7th Cir. 1997); *see also* Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir. 1992). Whether to allow leave to amend is within the district court's discretion. Campbell v. Ingersol Milling Machine Co., 893 F.2d 925, 927 (7th Cir. 1990). Prejudice is the most significant factor that weighs against the permissive policy toward amendments, and determining whether prejudice warrants denying leave to amend involves balancing the interests of the parties. Howard-Ahmad v. Chicago School Reform Bd. of Trustees, 2001 WL 197852, *2, 2001 U.S. Dist. LEXIS 2054 (N.D. Ill. 2001) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) and American Broadcasting Co., Inc. v. Maljack Prods., Inc., 1998 WL 325209, *1, 1998 U.S. Dist. LEXIS 9145 (N.D. Ill. 1998))).

Favoring AHMA is the fact that its proposed amendments present new factual allegations that support previously asserted theories, rather than new legal theories. *See* Lanigan v. LaSalle Bank, 108 F.R.D. 660, 662 (N.D. Ill. 1985); Murphy v. White Hen Pantry Co., 691 F.2d 350, 353 (7th Cir. 1982); Howard-Ahmad, 2001 WL 197852, *3 (denying motion for leave to amend when the proposed claims were "vastly different" from the existing claims); Tamari v. Bache & Co. S.A.L., 838 F.2d 904, 908 (7th Cir. 1988) (when plaintiff alleged only fraud, no abuse of discretion when the court denies leave to add, after ten years of litigation, a negligence claim); Johnson v. Methodist Medical Center of Illinois, 10 F.3d 1300, 1304 (7th Cir. 1993) (the court did not abuse its discretion in refusing to permit addition of a new theory introduced four years after the complaint was filed). AHMA's proposed additions would

support the portions of its breach of contract and breach of fiduciary duty claims that were dismissed. Further, the theories also overlap with other existing claims, such as the fraud claim, that allege that Reed was obligated to share and disclose revenue. AHMA is thus not changing theories in midstream. *See* Tamari, 838 F.2d at 909. Even if defendants lacked notice of the specific facts that AHMA seeks to allege, it cannot be said that the legal theories that those facts connect to are new or come as a surprise.

While written discovery has closed, no other discovery has occurred. No depositions have taken place, electronic discovery has not commenced, and no expert reports have been exchanged. Significantly, no trial date has been set. Murphy, 691 F.2d at 353-54 (affirming denial of motion for leave to amend when motion was filed six weeks before trial and several months after the close of discovery); Shrader v. Palos Anesthesia Assocs., S.C., 2003 U.S. Dist. LEXIS 16735, *5, 2003 WL 22225616 (N.D. Ill. 2003) (denying motion to amend when discovery had been closed for six months and proposed amendments would cause delay); Howard-Ahmad, 2001 WL 197852,(denying motion to amend when discovery had closed); Tamari, 838 F.2d at 908 (denying motion to amend brought six weeks before trial date). Neither is the timing of the motion suspect, and suggestive of an intent to delay or frustrate. *See* Brown v. Union Pacific R.R., 2006 U.S. Dist. LEXIS 4818, *7-8, 2006 WL 299070 (N.D.Ill. 2006) (citing cases).

Re-opening written discovery would cure any minimal prejudice caused by the amendments. Eastern Natural Gas, 126 F.3d at 999-1000 (district court did not abuse discretion when it granted motion for leave to amend 11 days before trial, when the motion was filed three months before trial and the court re-opened discovery on the topic of the amendment). Any additional written discovery triggered by the proposed amendments, such as documents

predating the 1977 Show Agreement, should not cause any delay. Magistrate Judge Mason, who set the initial termination date for written discovery, is in the best position to set the scope of any necessary written discovery.

AHMA filed its complaint on December 30, 2003, and its first amended complaint on July 16, 2004. Written discovery closed on April 25, 2006, and the motion for leave to amend was filed on May 16, 2006. Thus, AHMA presents its motion to amend 28 months after its original complaint, 22 months after the first amended complaint, and one month after the close of written fact discovery. Freeman argues that AHMA's delay in bringing the motion justifies its denial, regardless of the curative effect of additional limited written discovery. AHMA counters, and argues that Freeman fails to identify any prejudice arising from the timing of the motion for leave to amend.

Even if AHMA's motion causes no prejudice to defendants, substantial delay that prejudices the judicial system may justify the denial of a motion for leave to amend. Perrian, 958 F.2d at 194-95. We have noted that unexplained, unjustified, and lengthy delay provides grounds for denying leave to amend, Profile Racing, Inc. v. Profile for Speed, Inc. 1995 WL 549108 (N.D. Ill. 1995). In Profile Racing the plaintiff claimed that newly discovered evidence justified the late addition of a new defendant. But a close review of the record showed that the evidence that plaintiff claimed was newly discovered had actually long been produced. Tamari, cited in Profile Racing, did not specify a break-point at which delay became sufficiently prejudicial to warrant denial of leave to amend. Rather, the court in Tamari viewed the delay in light of external circumstances, including the interests of other litigants before the court, and ultimately concluded that the weight of the presumption in favor of amendment diminishes as the delay in seeking leave to amend increases. Tamari, 838 F.2d at 909. Thus, our inquiry

encompasses more than consideration of the amount of elapsed time.

AHMA argues that defendants' motions to stay discovery, to dismiss, and for summary judgment substantially contributed to the delay. Addressing the prospect of re-opening written discovery, AHMA states that its proposed amendments do not present new factual issues. If, however, this is true, then AHMA has known of the facts that it now seeks to introduce, and could have presented them at an earlier juncture. AHMA further states that 90 per cent of defendants' document production has transpired in the past three months, but it does not argue that the amendments are based on any recently produced documents.

The acknowledged purpose of the amendments is to supplement the flaws in the complaint, specifically the reference to "other agreements" that, according to the complaint, only provided for the sharing of specific sources of revenue, rather than all revenue. AHMA was a party to the agreements and a participant in the course of conduct that obligated Reed to share and disclose all revenue. After, and even before, the partial dismissal of its contract and fiduciary duty claims, it would appear that AHMA had access to information necessary to remedy the existing deficiencies in the complaint. For instance, proposed paragraph 132 describes a meeting in May 1985 between Reed and AHMA executives. At the meeting AHMA allegedly informed Reed that the Show Agreement provided AHMA with authority over revenue-related decisions and that Reed could not unilaterally make those decisions. In proposed paragraph 132, AHMA further alleges that Reed's former president acknowledged that Reed did not have the authority to approve unilaterally any revenue related to the Show. Despite knowing the relevance of the 1985 meeting, AHMA failed to make specific reference to it in the context of its initial and first amended breach of contract claim.

While it is difficult to condone AHMA's delay in alleging information it presumably

had access to even before it filed its complaint, denying AHMA's motion to amend is not appropriate. This is not the severe situation presented in <u>Tamari</u>, which involved ten years of litigation and a proposed amendment brought six weeks before trial. Even assuming that AHMA was well aware of the information it now seeks to include in its complaint, any necessary written discovery is not sufficiently prejudicial, distinguishing <u>Continental Bank, N.A. v. Meyer</u>, 10 F.3d 1293, 1298 (7th Cir. 1993) ("If the amendment were allowed the bank would have been put to additional discovery, and thus prejudiced").

Moreover, Reed, like AHMA, was a party to the agreements and meetings at issue, and their existence can come as no surprise. Similarly, Reed was AHMA's partner in a course of dealings that allegedly gave rise to a duty to share and disclose revenue. Even though this information cannot be classified as new, permissible amendments to a complaint need not be based on newly discovered information. At times, the evolution of a case, perhaps spurred by judicial construction of a complaint, may require that the complaint be amended to reflect the new landscape. Lastly, it is significant that the motion is presented in the early stages of the discovery process, with the balance of discovery yet to occur. Any additional written discovery – the only prejudicial impact the parties raise – will not, in and of itself, frustrate the resolution of this case and prejudice the judicial process. *See* <u>Perrian</u>, 958 F.2d at 195.

## CONCLUSION

For the foregoing reasons, AHMA's motion for leave to amend is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 6, 2004.