IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 03 C 9421 |
| REED ELSEVIER INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |
| REED ELSEVIER INC., a Massachusetts corporation, | ) ) ) | |
| Counter-plaintiff, | ) ) ) | |
| vs. | ) ) | |
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, a Delaware not-for-profit corporation, TIMOTHY FARRELL, and WILLIAM P. FARRELL, SR., | ) ) ) ) ) ) ) | |
| Counter-defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Hardware Manufacturers Association ("AHMA") brought suit against Reed Elsevier, Inc., Reed Exhibitions, and Association Expositions & Services (collectively "Reed"), and Freeman Decorating Co., and Freeman Decorating Services, Inc. (collectively "Freeman"), alleging various counts of common law and statutory breaches stemming from the breakdown of plaintiff's business relationships with defendants.[1]

---

[1] For a complete factual background, see American Hardware Manufacturers Association v. Reed Elsevier, Inc., 2004 U.S. Dist. LEXIS 28007 (N.D.Ill.2004).

Subsequently, Reed filed counterclaims against AHMA and Timothy S. Farrell and William Farrell ("Farrells"). In April 2005, the matter was referred to Magistrate Judge Levin for all discovery motions and supervision, and, subsequently, was reassigned to Magistrate Judge Mason. Since then, Judge Mason has presided over extensive motion practice regarding discovery disputes. Today we deal with a series of objections to Judge Mason's rulings. Specifically, Reed and Freeman (collectively "defendants") object to the magistrate judge's related orders of July 24, 2006, September 14, 2006, and September 18, 2006, and related orders of September 26, 2006, and October 17, 2006.

The first set of objections state defendants' contention that the magistrate judge erred in granting plaintiff's motion to compel Reed to produce documents regarding commissions received in connection with all of Reed's trade shows, granting plaintiff's motion to compel the production of Reed's general financial documentation without limiting the disclosure to Reed Exhibitions, and denying Reed's motion to compel documents reflecting the payments and perks given to family members of counter-defendants William and Timothy Farrell. The second set of objections assert that the magistrate judge again erred in limiting defendants to a combined 15 depositions.

The orders at issue deal with discovery disputes and are non-dispositive. Phillips v. Raymond Corp., 213 F.R.D. 521, 525 (N.D.Ill.2003); Bobkoski v. Board of Educ. of Cary Consol. School Dist. 26, 141 F.R.D. 88, 90 (N.D.Ill.1992). Thus, the standard of review for considering whether to set aside the magistrate judge's orders is governed by Federal Rule of Civil Procedure 72(a), which sets a clearly erroneous standard of review. Nat'l Educ. Corp.

v. Martin, 1994 WL 233661, *1 (N.D.Ill.1994).[2] A more extensive review would frustrate the purpose of referring discovery to a magistrate judge. *See id.* "Clearly erroneous" has been defined as a determination that upon assessing the evidence the reviewing court is "'left with the definite and firm conviction that a mistake has been committed.'" Bobkoski, 141 F.R.D. at 90-91 (citing United States v. United States Gypsum, 333 U.S. 364, 395 (1948)). *See also* Thornton v. Brown, 47 F.3d 194, 196-97 (7th Cir.1995) (defining "clearly erroneous" for Fed.R.Civ.P. 52(a) analysis, and noting that "[t]he trial court's choice between two permissible views of the evidence cannot be considered clearly erroneous").[3]

We begin with defendants' contention that plaintiff should not be entitled to all documents related to Reed and Freeman's nationwide agreement. In his order of July 24, 2006, Judge Mason granted plaintiff's motion to compel defendants to produce all documents (including financial information reflecting any payments/exchanges, "commissions," in-kind benefits or signing bonuses) relating to Reed and Freeman's nationwide agreement(s) and any documents discussing such agreements. Judge Mason found that such documents were

---

[2]Fed.R.Civ.P. 72(a) reads, in pertinent part: "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."

[3]Defendants point to Holland v. Island Creek Corp., 885 F.Supp.4 (D.D.C.1995) to argue that "it is incumbent on this Court to review adopted findings against the record 'with particular, even painstaking care' where, as here, the Magistrate did not offer a reasoned explanation for his decision and merely adopted plaintiff's argument." (Reed's brief in support of objection to Magistrate Judge's discovery orders of July 24, 2006, September 14, 2006, and September 18, 2006). While Holland does, in fact, make such a statement, Holland was decided in a different district, guided by different circuit court precedent. Defendants have not pointed us, nor have we found in our own search, similar language in the Seventh Circuit. The closest is Judge Shadur's suggestion that "[m]uch as the district judge should defer to the magistrate judge's decisions...he or she should not be hamstrung by the clearly erroneous standard.... [A]lthough an abuse-of-discretion attitude should apply to many discovery and related matters, it need not curtail the power of the district judge to make needed modifications in the magistrate judge's directives." Phillips, 213 F.R.D. at 525 (N.D.Ill.2003).

reasonably calculated to lead to the discovery of admissible evidence. In the same order Judge Mason denied plaintiff's motion to compel Reed's agreements with other associations or owners affiliated with trade shows, where Freeman paid Reed "commissions" and in-kind benefits, finding plaintiff's arguments insufficient to show that such discovery was reasonably calculated to lead to admissible evidence. In clarifying his order of July 24, 2006, in recognition of the "enormous amount of responsive material Reed and Freeman would have to collect, review and produce," Judge Mason limited plaintiff's discovery to financial information reflecting any payments/exchanges, "commissions," in-kind benefits and signing bonuses, omitting from discovery routine performance communications. He also limited the discovery to the years 1997 and 1998, noting in a footnote that the court would revisit the import of additional discovery if and when AHMA demonstrated its benefit. Defendants ask this court to reverse Judge Mason's order granting plaintiff's motion to compel with respect to defendants' other trade shows, and to quash plaintiff's subpoenas to the other associations involved in such shows.

Reed argues that "[t]he mere fact that Reed and Freeman were parties to nationwide agreements does not entitle plaintiff to documents and information from Reed's other trade shows" (Reed's brief, at 7). Freeman contends that because there is no overlap between the commissions that Freeman paid for the National Hardware Show and the commissions for any other Freeman/Reed show, plaintiff cannot show that discovery of the nationwide agreements is reasonably calculated to lead to admissible evidence. In support, Freeman submitted the declaration of Linda Pilgrim, who was in charge of calculating the commission payments from Freeman to Reed in the years in question. Ms. Pilgrim averred: "My calculations of the commission payments for the individual Freeman/Reed Shows, including the National

Hardware Show ("NHS"), were solely based upon the Exhibitor Billing amounts for that particular show.... As a result, the calculation of the commissions for the NHS is separate from, and entirely unrelated to, anything to do with any of the other Reed/Freeman shows." Plaintiff's response suggests that defendants' are over-simplifying the rationale for plaintiff's request. Plaintiff clarifies that it seeks more than financial information necessary to trace the commissions allocated to Freeman by Reed with regard to the National Hardware Show. Rather, plaintiff desires such discovery to evidence that Reed leveraged the National Hardware Show to entice Freeman into the nationwide agreements. Plaintiff continues, "if AHMA is not permitted full discovery in connection with the Reed/Freeman agreements, AHMA will be left to essentially accept Reed and Freeman's litigation position on the impact and implications of their conduct" (plf's response, at 4-5).

Rule 26(b)(1) permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ... The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." For discovery purposes, relevance is broadly construed. Behnia v. Shapiro, 176 F.R.D. 277, 280 (N.D.Ill.1997) (citing AM Int'l Inc. v. Eastman Kodak Co., 100 F.R.D. 255, 257 (N.D.Ill.1981)). Defendants have admitted that Freeman paid Reed commissions pursuant to a nationwide agreement (see, e.g., plf's response, exh. B, at ¶ 3). Freeman, in fact, noted that "it paid lawful commissions to Reed in certain years pursuant to a 1998 nationwide contract that based the amount of the lawful commissions on the total of the net exhibitor billings for all of the Reed/Freeman shows, including the National Hardware Show." (Id., at ¶¶ 34, 35). Plaintiff has introduced evidence that the

Reed/Freeman contracts were negotiated at a national, rather than individual, level (plf's response, exh. D, at 30). Therefore, plaintiff has submitted sufficient evidence to support Judge Mason's ruling that it is entitled to discovery of documents related to the nationwide agreement. *But cf.* Cadillac Ins. Co. v. American Nat'l Bank, 1992 U.S. Dist. LEXIS 2815 (N.D.Ill.1992) (conclusory allegation of commingling accounts was insufficient to persuade the court to broaden the scope of discovery by requiring production of otherwise irrelevant documentation). As the parties do not address the burden of production, and Judge Mason has already undertaken a balancing analysis, we will not disturb his order with respect to exactly what must be produced. In light of this, we also uphold Judge Mason's order regarding the seven subpoenas plaintiff issued to trade associations covered by the Reed/Freeman nationwide agreements.

We turn next to the dispute over the discovery of defendants' financial information. In Judge Mason's order of July 24, 2006, he granted plaintiff's motion to compel financial information relating to the National Hardware Show, Reed Exhibitions and Reed Elsevier, Inc., and Freeman Decorating Company. On September 14, 2006, upon consideration of defendants' motion to reconsider, Judge Mason limited plaintiff's discovery of Reed's financials to "information incorporating Reed Exhibitions" for 1997 and 1998. The magistrate judge again noted that discovery for additional years may be revisited in the future upon plaintiff's demonstration of good cause.

Reed now argues that Judge Mason's order remains unclear and asks this court to amend it to limit plaintiff's discovery to financial documents that "expressly mention Reed Exhibitions." Reed asserts: "In one sense, all of Reed Elsevier Inc.'s financial documents 'incorporate' Reed Exhibitions, since Reed Exhibitions is merely a division of Reed Elsevier

Inc. In addition, most often, Reed's overall financial documents do not break out Reed Exhibitions' information. The information is simply an unidentified and non-segregated component of total numbers on Reed's general financial statements."

We do not find Reed's objections persuasive. Plaintiff's second amended complaint is replete with allegations that Reed concealed the alleged kickbacks, commissions, and bribes from AHMA. (*See* 2d am.cplt., at ¶¶ 56, 87, 88, 90, 93, 94, 152). The allegations further note that such payments were concealed in Reed's accounting and financial data. (*See id.*, at ¶¶ 89, 95, 103, 154, 156). As Reed admits that Reed Elsevier Inc.'s financial documents account for and incorporate the financials of Reed Exhibitions, it is incumbent on Reed to produce such documents to plaintiff. Judge Mason has already weighed the balance of hardships, and in light of the massive amount of financial information documentation, limited the production to 1997 and 1998. We think such a limitation is sufficient.[4]

Freeman also objects to plaintiff's request for the production of Freeman's tax returns and documentation related to the finances of the corporation as a whole. Freeman suggests that plaintiff's request is "purely and simply a fishing expedition," is irrelevant to plaintiff's claims or defendants' counterclaims, and is unduly burdensome. (Freeman's brief, at 8-10). Citing Fields v. General Motor Corp., 1996 WL 14040, *4 (N.D.Ill.1996), Freeman argues that a taxpayer should not be compelled to disclose its income tax return information merely because it is a party to a lawsuit (*id.*, at 7). Freeman correctly notes that courts have been reticent to require parties to produce such documentation unless the litigant puts its income

---

[4] We note that any financial documents that have no reflection of Reed Exhibitions financials are outside the scope of plaintiff's discovery. Therefore, a financial statement of a division of Reed (*e.g.*, LexisNexis) that does not incorporate Reed Exhibitions is not discoverable. But financial documents of Reed Elsevier Inc., incorporating Reed Exhibitions, even if they do not expressly mention Reed Exhibitions, are discoverable.

at issue. Fields, 1996 WL 14040 at *4. *See also* Payne v. Howard, 75 F.R.D. 465, 470 (D.D.C.1977) (denying motion to compel defendant's tax returns where plaintiff, not defendant, put defendant's income at issue). Courts have looked to 26 U.S.C. §§ 6103 and 7213(a) to suggest that public policy warns against forcing disclosure of income tax returns, especially where the necessary information can be disclosed through other means. *Id.*; Federal Sav. & Loan Ins. Corp. v. Krueger, 55 F.R.D. 512, 514 (N.D.Ill.1972) (noting that the policy is "grounded in the interest of the government in full disclosure of all the taxpayer's income which thereby maximizes revenue"). Traditional public policy and privacy concerns, however, are not at the forefront of this dispute. Generally, one party seeks its opponents tax returns to use the opponent's amount of income against him. Where, as here, plaintiff seeks Freeman's tax returns to show how Freeman concealed payments to Reed as deductible business expenses, disclosure of Freeman's tax returns "would not hinder the public policy of full and accurate disclosure of a taxpayer's income." Houlihan v. Anderson-Stokes, Inc., 78 F.R.D. 232, 234 (D.D.C.1978). *See also* Shaver v. Yacht Outward Bound, 71 F.R.D. 561 (N.D.Ill.1976). Additionally, the parties have entered into a series of protective orders, under which Freeman's tax returns can be disclosed. *See* American Air Filter Co., Inc. v. Kannapell, 1990 WL 137385, *4 (D.D.C.990) (noting that privacy concerns were abated where plaintiff offered to sign a confidentiality stipulation whereby defendant's tax returns would not be disclosed to anyone other than counsel).

Like Judge Mason, we find Freeman's tax returns relevant to plaintiff's claims. For example, plaintiff's second amended complaint asserts, "Freeman's deceptive course of conduct, which included (a) paying undisclosed kickbacks – disguised as commissions or rebates – to Reed in return for being hired as general contractor for the Show, ...(c) paying

bribes to Reed in exchange for the lucrative general contractor position for the Show, and (d) the concealment, suppression and omission of material facts from AHMA, with the intent that AHMA rely upon the concealment, suppression or omission of such material facts, constitutes deceptive practices under the Consumer Fraud Act and is the type of conduct that the Act was created to remedy." (2nd am.cplt., ¶ 104). Also noting the deposition testimony of Mr. Beaudin, Freeman's 30(b)(6) witness, indicating that (1) Freeman Decorating Services, Inc. does not file a federal tax return, (2) Freeman Decorating Company does file a federal tax return, (3) Freeman Decorating Company's tax return reflects the accounts and performance of Freeman Decorating Services, Inc., and (4) Freeman treated the commissions it received from Reed as tax deductible business expenses (Beaudin dep, at pp. 71-72), we find that plaintiff is entitled to discover Freeman's tax returns for the relevant years.

Freeman's objection to produce financial documentation related to the company as a whole is also rejected. Freeman's argument centers on the burden it will face in producing such documents, compared to the limited benefit to plaintiff. Judge Mason accounted for such a burden and limited the production to the years 1997 and 1998. We see no reason to disturb his finding. *See* American Dental Ass'n Health Foundation v. Bisco, Inc., 1992 WL 107299, *3 (N.D.Ill.1992) (a magistrate judge's failure to articulate his or her reasoning is, by itself, insufficient to require a remand, especially when there is no evidence that the analysis was conducted in anything but a careful manner).

Next, we turn to defendants' objections to Judge Mason's order denying defendants' motion to compel with respect to (1) documents reflecting AHMA's payments or perks to other Farrell family members, and any entities in which they were shareholders, partners or employees; and (2) documents reflecting the amount of legal fees paid to a law firm at which

William Farrell, Sr.'s son, William Farrell, Jr., was a partner. In Judge Mason's order of July 24, 2006, he denied defendants' requests to obtain discovery from the family members of the individual counter-defendants as irrelevant to the issues presented in the case. Defendants assert that the judge erred in his relevancy determination, arguing that the payments and perks to counter-defendants' families are relevant to defendants' defamation counterclaim, specifically to individual counter-defendants' bad faith motive in filing this suit. Defendants further argue that the payments to William Farrell, Jr.'s law firm are relevant to bias and damages.

Plaintiff argues that defendants' objections are untimely, as they were filed on September 29, 2006, in response to Judge Mason's order of July 24, 2006. The Federal Rules of Civil Procedure require that any objections to a magistrate judge's order be filed within ten days of the order (Rule 72(a)). We are, however, persuaded that where, as here, the magistrate judge was considering a motion to clarify or reconsider, the ten days should not begin to run until the magistrate judge comes to a final conclusion. *See* Epperly v. Lehmann Co., 161 F.R.D. 72, 74 (S.D.Ind.1994) (relying on Comeau v. Rupp, 142 F.R.D. 683, 685-86 (D.Kan.1992)). Therefore, defendants would be granted ten days from the date of Judge Mason's order on reconsideration, filed September 14, 2006. Defendants argue that they properly excluded weekends and the date of ruling to arrive at the September 29, 2004 objection filing date. Defendants incorrectly note that Judge Mason filed his reconsideration order on September 15, 2006. Rather, he filed the order on September 14, 2006. Discounting weekends, defendants' objections were due September 28, 2004.

Because the magistrate judge's order was mailed to the parties, however, Rule 6(e) adds three mailing days onto the length of time necessary to object. Not counting weekends and

holidays, that would allow defendants until October 3, 2006, to object. Counting holidays and weekends, defendants' objections would be timely on or before September 27, 2006. There is a debate over whether the ten-day period includes weekends and holidays where, as here, the magistrate judge mailed his order to counsel of record. The issue involves an analysis of the interplay between Rules 72(a), 6(a), and 6(e). In THK America, Inc. v. NSK Ltd., 157 F.R.D. 651 (N.D.Ill.1994), Judge Norgle held that where the magistrate judge mailed his order to counsel, the application of Rule 6(e) extended the time to file objections to 13 days. This, Judge Norgle noted, took the defendants' objections out of Rule 6(a), and therefore the 13-day time period included holidays and weekends. Other courts disagree, and commence the ten-day period at the end of the three-day mailing period. *See* Epperly, 161 F.R.D. at 75-76. While both sides have persuasive arguments, because Judge Mason's order did not clearly state the filing deadlines for objections (*but cf.* THK America, Inc., 157 F.R.D. at 654), we will proceed to address the merits of defendants' objections.

Defendants contend that counter-defendants put the disputed discovery at issue in asserting the affirmative defense of business judgment rule and right of fair comment on a matter of public interest to defendants' defamation counterclaim. Defendants assert that they are "entitled to defeat these affirmative defenses by demonstrating that AHMA and its officers, the Farrells, abused the privilege through bad faith and improper motivation" (Reed's brief, at 11). Specifically, defendants contend that they are entitled to discovery to prove "that AHMA's motivation in filing the lawsuit was to defame Reed in order to protect the Farrell family's receipt of payments and perks" (Reed's brief, at 11).

In Illinois, a party defending against a defamation suit may be entitled to a qualified or conditional privilege. In Kuwik v. Starmark Star Marketing and Administration, Inc., 619

N.E.2d 129 (Ill.1993), the Illinois Supreme Court rejected the previously used two-part test for conditional privilege, whereby (1) the judge determined, as a matter of law, whether defendant acted in good faith by applying a five-part test (including a determination of good faith) to determine whether the privilege applied, and then (2) the fact-finder determined whether the defendant acted with malice to defeat the privilege. Instead, the Kuwik court held that the judge should determine whether the occasion was conditionally privileged and then the fact-finder should determine whether the defendant abused such a privilege. *Id.* For our practical purposes, the change means that the Kuwik court took the good faith determination out of the initial determination and wrapped it into the jury's determination of abuse of privilege. The Kuwik court explained, "to prove an abuse of the qualified privilege, the plaintiff must show 'a direct intention to injure another, or *** a reckless disregard of [the defamed party's] rights and of the consequences that may result to him.'" *Id.*, at 135-36 (quoting Bratt v. Int'l Business Machines Corp., 467 N.E.2d 126, 131 (Mass.1961)). The Illinois Supreme Court continued: "Thus, an abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Id.*

Essentially, defendants argue that (1) counter-defendants defamed Reed by filing this lawsuit; (2) the suit was filed in bad faith and with improper motivation to protect counter-defendants' and their families' perks and payments associated with the hardware show; (3) the bad faith defeats counter-defendants' affirmative defenses of qualified or conditional privileges; and (4) thus the amount of the perks and payment (the self-enrichment) is relevant to defendants' counterclaims or at least likely to lead to admissible evidence. Specifically,

Reed asserts, "[t]he lengths to which AHMA and its officers would go to protect the Farrell family fortune can only be explored by determining through discovery how much AHMA paid to all family members – whether it was in salary, gifts, perks, cars, or legal fees paid to the firm in which William Farrell, Jr. was a partner. The higher the amount AHMA stood to lose if its 2004 show failed and Reed's 2004 National Hardware Show succeeded, the more likely it is that this litigation was filed only to allow AHMA to defame Reed and attempt to hide behind the veil of various conditional privileges to defamation" (Reed's brief, at 13).

Under Kuwik, "it is the province of the trier of fact to determine whether the qualified privilege has been abused by examining the facts of a particular case, including whether the defendant acted in good faith." Girsberger v. Kresz, 633 N.E.2d 781, 794 (Ill.App.Ct.1993). As we noted above, Rule 26 permits comprehensive discovery, and relevance is construed broadly. It is our view that it is possible that discovery of the payments and perks to the Farrell family members could lead to admissible evidence helpful to a jury in determining whether counter-defendants abused their conditional privilege as to Reed's defamation claims. Therefore, we reverse Judge Mason's denial of defendants' motion to compel.

Finally, we turn to defendants' motions objecting to Judge Mason's order restricting their depositions. The procedural history of this motion is complicated and very well briefed. After an inability to agree on the number of depositions due each side, plaintiff (AHMA) and counter-defendants (Farrells) moved to collectively take 30 depositions. Without response from Reed, Judge Mason determined that the number of depositions taken in the case should be limited to 45. Confusion regarding the allocation of the 45 depositions ensued, and Reed and

Freeman moved for clarification.[5] Judge Mason, in an order dated September 26, 2006, clarified: AHMA was entitled to 15 depositions, Farrells to 15 depositions, and Reed and Freeman, collectively, to 15 depositions. On October 12, 2006, Reed and Freeman filed two motions, one before this court and the other before the magistrate judge. The motion before this court was an objection to Judge Mason's September 26, 2006, order. The motion before Judge Mason was an affirmative request from Reed and Freeman to increase the number of their depositions to 30. On October 17, 2006, Judge Mason denied Reed and Freeman's request for additional depositions, but noted: "Nevertheless, if, after taking fifteen depositions allotted, Reed and Freeman demonstrate that good cause exists to exceed fifteen depositions, we will revisit the issue." In the meantime, the parties briefed Reed and Freeman's objections to Judge Mason's September 26, 2006, order. Before we had an opportunity to take a look at those briefings, Reed and Freeman filed their objections to Judge Mason's October 17, 2006, order, to be consolidated with their objections filed to his September 26, 2006, order. An opposition brief filed by AHMA and Farrells arrived on November 11, 2006, and the issues became ripe for determination.

A lot of paperwork boils down to a small number of arguments from Reed and Freeman that Judge Mason's decision to restrict their depositions to 15 was clearly erroneous. None is persuasive. First, defendants argue that because Judge Mason did not wait for a response to AHMA and Farrells' request for 30 depositions before he ruled, the September 26, 2006, order was clearly erroneous. We disagree. Rule 26(b)(2) allows the court to alter the number of depositions (ten) guaranteed under Rule 30(a)(2)(A). The Advisory Committee notes from 1983

---

[5]Reed and Freeman believed Judge Mason awarded them, collectively, 25 depositions, and AHMA and Farrells, collectively, 20 depositions. AHMA and Farrells understood Judge Mason's order to grant AHMA 15 depositions, Farrells 15 depositions, and Reed and Freeman, collectively, 15 depositions.

state, "The court may act on motion, or its own initiative." Furthermore, Reed and Freeman subsequently filed an affirmative request for 30 depositions, which was considered and rejected by Judge Mason. Their arguments have been given their fair due.

Second, defendants argue that the allocation of depositions is unfair. Their inequity argument, in addition to asserting a general sense of unfairness, indicates that because their interests are not as aligned as AHMA and Farrells' are, they should be entitled to at least as many depositions. We do not find Judge Mason's ruling clearly erroneous. The 1983 Advisory Committee notes regarding Rule 26(b)(2) state: "The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse.... But the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." We think Judge Mason conformed to both sentences, without error. He limited the parties' depositions to fifteen each,[6] and allowed Reed and Freeman the opportunity to revisit the issue in the future upon a showing of good cause. No more is necessary. Further, Reed and Freeman have generally presented a united front in approaching their defense. Therefore, although they may be separate entities, their interests are generally aligned.

Third, defendants contend that the extent and complexity of the case requires extra depositions. We must weigh the benefit to defendants of additional discovery against the cost and burden to all of the parties of participating in such discovery. Judge Mason is well aware of the issues and claims in this case, as well as the resources and requests of each party. He is

---

[6]Rule 30(a)(2)(A) defines the deposing parties to be (1) plaintiffs, (2) defendants, and (3) third party defendants. Here, AHMA is the plaintiff, Reed and Freeman are the defendants, and Farrells are the third party defendants. Judge Mason granted each party 15 depositions, and specified that AHMA and the Farrells could not share their allocation. Defendants assert that Judge Mason's conformance with the Federal Rules of Civil Procedure elevates form over substance. We disagree.

in the best position to weigh the benefits against the burdens, and we see no reason to reverse his determination. Therefore, we deny defendants' objections to the magistrate judge's order restricting their depositions to 15. Each party should pay its own costs associated with this motion.

## CONCLUSION

For the reasons stated herein, we affirm the magistrate judge's orders with respect to plaintiff's motion to compel Reed to produce documents regarding commissions received in connection with all of Reed's trade shows, plaintiff's motion to compel the production of Reed's general financial documentation, without limiting the disclosure to Reed Exhibitions, and defendants' motion for leave to take 30 depositions. We reverse the magistrate judge's orders with respect to Reed's motion to compel documents reflecting AHMA's payments and perks given to family members of counter-defendants William Farrell, Sr. and Timothy Farrell.

*JAMES B. MORAN*
Senior Judge, U. S. District Court

Feb. 13, 2007.