IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 03 C 9421 |
| REED ELSEVIER INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

-------------------------------------------------

| | | |
|---|---|---|
| REED ELSEVIER INC., a Massachusetts corporation, | ) ) ) | |
| Counter-plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, a Delaware not-for-profit corporation, TIMOTHY FARRELL, and WILLIAM P. FARRELL, SR., | ) ) ) ) ) ) | |
| Counter-defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff American Hardware Manufacturers Association ("AHMA") brought suit against Reed Elsevier, Inc, Reed Exhibitions, and Association Expositions & Services (collectively "Reed"); and Freeman Decorating Co. and Freeman Decorating Services, Inc. (collectively "Freeman"), alleging various counts of common law and statutory breaches stemming from the breakdown of plaintiff's business relationships with defendants. Subsequently, Reed filed counterclaims against AHMA and Timothy S. Farrell and William P. Farrell ("Farrell"). In April 2005, the case was referred to Magistrate Judge Levin for all

discovery motions and supervision, and was subsequently reassigned to Magistrate Judge Mason. Since then Judge Mason has presided over extensive motion practice regarding discovery disputes. On July 24, 2006, Judge Mason ruled regarding motions to compel from AHMA, Reed and Freeman. Subsequent to his ruling, both sides of this dispute (AHMA and Farrells, jointly, and Reed and Freeman, jointly) filed objections to Judge Mason's discovery determinations. On February 13, 2007, this court addressed the objections filed by Reed and Freeman. *See* American Hardware Manufacturers Association v. Reed Elsevier Inc., 03 c 9421 (dkt. 509, 2/13/07) ("Objections I"). As much of that ruling is related to the ruling herein, we assume familiarity with that order. We turn now to AHMA and Farrells' objections to Judge Mason's July 24, 2006, order. Specifically, AHMA and Farrells request that we reverse Judge Mason's grant of defendants' motion to compel with respect to (1) all documents relating to the consideration and appointment of Timothy Farrell as President and CEO of AHMA; (2) all benefits, compensation, and personnel records of William and Timothy Farrell; and (3) all financial statements relating to AHMA, William and Timothy Farrell. For the reasons stated below, we affirm Judge Mason's determination and deny relief on AHMA's and Farrells' objections.

In considering whether to overturn a magistrate judge's ruling on a discovery motion, the standard of review is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A finding is "clearly erroneous" only "if the district court is left with the definite and firm conviction that a mistake has been made." Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 943 (7th Cir.1997). Therefore, counter-defendants face a high burden in their attempt to show that Judge Mason's ruling was in error.

AHMA and Farrells contest the discovery of the aforementioned documents because,

as they contend, the documents would be neither relevant nor likely to lead to the discovery of admissible evidence. Reed and Freeman assert, however, that the documents requested are relevant to disproving counter-defendants' affirmative defenses to defamation, proving Freeman's affirmative defense of laches, and proving counter-plaintiffs' claim for punitive damages. Further, Reed and Freeman assert that evidence of counter-defendants' financial and professional conduct is relevant to rebut the causation requirement of plaintiff's claims. Specifically, counter-plaintiffs theorize that the decline in participation in AHMA's hardware show could be attributed to counter-defendants' actions, rather than the actions of Reed and Freeman. Magistrate Judge Mason generally agreed with Reed and Freeman, compelling AHMA to produce documents relating to AHMA's and Farrells' receipt of discounts, commissions, concessions, rebates, gifts or other benefits from contractors or other service providers, and documents relating to financial benefits and perks received by William P. Farrell, Sr. and Timothy S. Farrell. Judge Mason limited the second category by denying defendants' request to receive similar documents relating to the Farrells' family members. In Objections I, we reversed Judge Mason's denial of defendant's motion to compel perks and benefits paid to the Farrell family. Therein, we determined that, based on the Illinois Supreme Court's ruling in Kuwik v. Starmark Star Marketing and Administration, Inc., 619 N.E.2d 129 (Ill.1993), Reed and Freeman were entitled to discover a broad range of documents that may lead to evidence that would rebut counter-defendants' defamation qualified privilege defenses. Because the Kuwik court took the good faith determination out of the court's hands and wrapped it into the jury's determination of abuse of privilege, we held that perks and benefits paid to the Farrell family "could lead to admissible evidence helpful to a jury in determining whether counter-defendants abused their conditional privilege as to Reed's defamation

claims." (Objections I, at 13.) Because we already granted the broader discovery (perks and payments to the Farrell family), we will not now deny the narrower discovery (perks and payments paid to Farrell counter-defendants themselves).[1]

While such a determination essentially applies to all three groups of contested documents, we briefly address counter-defendants' remaining arguments to ensure that the scope of discovery is proper. First, counter-defendants assert that AHMA's motivation for bringing suit is not relevant to the subject matter of the litigation and is therefore not discoverable. We found above that the motivation is in fact relevant to a jury's determination of whether AHMA abused its qualified privilege with regard to defamation. Second, counter-defendants argue that the documents cannot be relevant to causation of the failure of AHMA's hardware show because non-public information could not have formed the basis for dissatisfaction in the industry. Reed and Freeman have pointed to public documents that discussed counter-defendants' actions, financials, and alleged mismanagement. Reed and Freeman are entitled to delve into those considerations further. Finally, counter-defendants assert that a punitive damages claim cannot serve as the basis for discovery of far-reaching and detailed financial documents. Where courts have permitted discovery of a plaintiff's financial condition, counter-defendants continue, discovery has been limited to the party's current financial condition. We note at the outset that punitive damages may be awarded in

---

[1] Counter-defendants argue that because defendants could not contend AHMA failed to properly investigate the truth of its allegations, counter-defendants' motivations have no bearing on whether the allegedly defamatory statements were qualifiedly privileged. Counter-defendants made the same arguments in Objections I, which we rejected, as "factual questions relating to abuse [of a qualified privilege], such as the defendant's good faith, the scope of the statement, and the defendant's choice of recipient, are left for the jury to determine." Jones v. Western & Southern Life Ins. Co., 91 F.3d 1032, 1035 (7th Cir. 1996) (citing Kuwik, 619 N.E.2d at 134). See also Dawson v. New York Life Ins. Co., 135 F.3d 1158, 1167 (7th Cir.1998) ("Kuwik included 'the failure to properly investigate the truth of the matter' as one possible way to prove reckless disregard, but did not limit proof of reckless disregard to the failure to investigate"). Clearly, defendants will have an uphill battle if AHMA properly investigated the truth of its allegations, but, at this stage, we will make no such determination.

a defamation case "where a party, acting with actual malice, publishes false information about a person or entity." Int'l Union of Operating Engineers, Local 150 v. Lowe Excavating Co., 2006 WL 3493047, *19 (Ill.2006). Many courts have noted that a defendant's net worth is relevant in calculating punitive damages. Georgeson v. Dupage Surgical Consultants, LTD., 2007 WL 914207, *3 (N.D.Ill.2007); Cox v. Prime Financial Mortg. Corp., 2006 WL 1049948, *3 (N.D.Ill.2006); Fieldturf Int'l, Inc., Fieldturf, Inc. v. Triexe Management Group, Inc., 2004 WL 866494, *2 (N.D.Ill.2004); Riad v. 520 South Michigan Ave. Associates Ltd., 2000 WL 988530, *1 (N.D.Ill.2000). While the Seventh Circuit has intimated in dicta that using a corporate defendant's net worth as a starting point for punitive damages may "lead[] people astray" (Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 508 (7th Cir.1992)), because defendants have sufficiently shown the need for such information we cannot find that Judge Mason's ruling was clearly erroneous.

For the reasons stated herein, we affirm Judge Mason's July 24, 2006, order as discussed herein and deny the award of relief requested in counter-defendants' joint objections.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 11, 2007.