IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 03 C 9421 ) |
| REED ELSEVIER INC., *et al.*, | ) ) ) |
| Defendants. | ) |
| REED ELSEVIER INC., a Massachusetts corporation, | ) ) ) |
| Counter-plaintiff, | ) ) ) |
| vs. | ) ) |
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, a Delaware not-for-profit corporation, TIMOTHY FARRELL, and WILLIAM P. FARRELL, SR., | ) ) ) ) ) ) |
| Counter-defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Hardware Manufacturers Association ("AHMA") brought suit against Reed Elsevier, Inc, Reed Exhibitions, and Association Expositions & Services (collectively "Reed"); and Freeman Decorating Co. and Freeman Decorating Services, Inc. (collectively "Freeman"), alleging various counts of common law and statutory breaches stemming from the breakdown of plaintiff's business relationships with defendants.[1] Subsequently, Reed filed counterclaims against AHMA and Timothy S. Farrell and William

---

[1] For a complete factual background, see American Hardware Manufacturers Association v. Reed Elsevier, Inc., 2004 U.S. Dist. LEXIS 28007 (N.D.Ill.2004).

P. Farrell ("Farrells"). On September 29, 2004, the court entered a protective order regarding confidentiality ("protective order"). <u>American Hardware Manufacturers Ass'n v. Reed Elsevier Inc.</u>, 03 c 9421 (dkt. no. 43, 9/29/04). The two-tiered protective order allows for designation of protected information as either "confidential information" or "highly confidential information." In an opinion related to the protective order, the court determined that the party seeking protection under the protective order should so designate any documents, and thereafter the party opposed to the designation should seek to strike it. <u>American Hardware Manufacturers Ass'n v. Reed Elsevier Inc.</u>, 03 c 9421 (dkt. no. 39, 9/17/04). Such is the situation before us. On November 8 and 9, 2006, AHMA deposed Richard White, Reed's former President and CEO. Claiming that the information disclosed in the deposition is protected under the terms of the protective order, Reed and Freeman designated a significant portion of the deposition as "confidential," and certain limited portions as "highly confidential." With limited exceptions, AHMA now seeks to strike the confidential designation of the deposition, or, in the alternative, seeks a ruling that documents deemed "confidential" need not be filed under seal under the terms of the protective order. For the reasons stated herein, we deny in part AHMA's motion.

Federal Rule of Civil Procedure 26(c) states that "[u]pon motion by a party or by the person from whom discovery is sought...the court in which the action is pending...may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking to maintain confidentiality has the burden of persuasion. <u>American Hardware Manufacturers Ass'n v. Reed Elsevier Inc.</u>, 03 C 9421 (dkt. no. 39, 9/17/04). <i>See also</i> <u>Sassak v. City of Park Ridge</u>, 2006 WL 3147718, *2 (N.D.Ill.2006). In this case, as in <u>Sassak</u>, a protective order has already been issued, and we must now determine whether the deposition testimony falls within the ambit of the protective

order.

Although we initially found good cause to enter a protective order, where, as here, confidentiality is challenged, the party seeking confidentiality must continue to show good cause. In re Bank One Securities Litigation, 222 F.R.D. 582, 586 (N.D.Ill.2004) (citing Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir.2000)). Analysis of good cause "requires balancing the harm to the party seeking the protective order and the importance of disclosure to the public." Paine v. City of Chicago, 2006 WL 3065515, *7 (N.D.Ill.2006). We may consider privacy interests, importance of disclosure to public health and safety, and confidentiality of public officials in determining good cause. *Id.*

The Seventh Circuit has clearly stated that while "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record" those documents that "influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 545 (7th Cir.2002). Thus, at the summary judgment, trial or appellate stage, documents that have previously been deemed confidential may not retain such a designation. *See* Little v. Mitsubishi Motor Mfg. of America, Inc., 2006 WL 1554317, *3 (C.D.Ill.2006). At this point, however, because the Northern District of Illinois local rules "prohibit the filing of discovery materials, including deposition transcripts and videotapes, as part of the public record except as evidence" (Hobley v. Chicago Police Commander Burge, 225 F.R.D. 221, 224 (N.D.Ill.,2004) (citing L.R. 26.3)), the public's immediate interest in this deposition is not threatened. *Cf.* Leavell, 220 F.3d at 567 ("Judges deliberate in private but issue public decisions after public arguments based on public records.... Any step that withdraws an element of the judicial process from public view makes the ensuing decision look

more like fiat, which requires compelling justification").[2]

We turn now to the protective order issued in this case. "Confidential Information" is defined as "information in oral, written, or electronically accessible form not generally available to the public, which may or may not include contracts and agreements with third parties, customer relationships, vendor relationships, financial information, financial transactions, and personal information, the disclosure of which could adversely affect the competitive advantages or position of the party from which the information was obtained or could violate individual privacy." Such information may be disclosed only to counsel and their necessary staff; officers, directors, and employees of parties to the litigation, provided that such information be used solely for the purposes of the litigation; testifying and non-testifying experts who have agreed in writing to be bound by the protective order and use the confidential information solely for the purposes of the litigation; the court; and court reporters. "Highly Confidential Information" is defined as "Confidential Information in oral, written, or electronically accessible form that constitutes trade secrets or other information that has been kept confidential and would be of commercial value in the trade show and exhibitions industry, which may or may not include contracts and agreements with third parties, information regarding business methods, modes, techniques, practices, forecasts, and plans, and personal information, the disclosure of which would harm the competitive position of the party from which the information was obtained." Highly confidential information is distinguished from confidential information by adding the following restrictions: "(a) no documents containing Highly Confidential Information shall be disclosed to any officers, directors, and employees of parties to this litigation; and (b) all such documents disclosed in

---

[2] Reed argues that AHMA's motion is premature and violates the procedures set up in the protective order. Such a technical challenge is "'immaterial to a determination of whether the information belongs in the public domain.'" In re Bank One Securities Litigation, 222 F.R.D. at 586-87 (internal citations omitted).

any papers to be filed with the Court shall be filed under seal in accordance with the rules of the Court."

The disputed portions of the White deposition can be broken into three areas deemed "confidential": (1) information regarding the Reed-Freeman contract; (2) Reed's internal and external financial audits; and (3) White's allegedly false testimony regarding Reed's internal assessment of its ownership of assets and other fiduciary obligations. Reed has also designated White's testimony regarding Nepcon as "highly confidential."

We begin first with testimony regarding the Reed-Freeman contract. Reed and Freeman suggest that the terms of the contract may qualify as a trade secret, and that disclosure of such information would cause Reed great harm by allowing competitors to structure their bids and proposals to undermine Reed's competitive process. In an order filed on January 19, 2006, Magistrate Judge Mason addressed similar concerns. In that opinion Judge Mason rejected Reed's argument that documents related to the Reed-Freeman contract were trade secrets as conclusory and vague. He also found Reed's argument that removing the "highly confidential" designation from the Freeman agreements would cause Reed harm because its competitors would by able to fashion competing bids against Reed unpersuasive. In light of his analysis, Judge Mason re-designated the Freeman agreements and relevant third party documents as "confidential information" under the terms of the protective order. American Hardware Manufacturers Ass'n v. Reed Elsevier Inc., 03 c 9421 (dkt. no. 243, 1/19/06).

We agree with Judge Mason that White's testimony regarding the Reed-Freeman contract is unlikely to be deemed a trade secret. Under Illinois law, a trade secret is defined as "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data,

or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." Illinois Trade Secrets Act, 765 ILCS 1065/2(d) (West 2007). Courts have also looked at the following factors to determine the existence of a trade secret: "(1) the extent to which the information is known outside of [the employer's] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the employer] to guard the secrecy of the information; (4) the value of the information to [the employer] and to his [or her] competitors; (5) the amount of effort or money expended by [the employer] in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.'" Delta Medical Systems v. Mid-America Medical Systems, Inc., 331 Ill.App.3d 777, 789 (Ill.App.Ct.2002) (internal citations omitted). Reed's submission of various declarations asserting the importance of the Freeman contract, the "highly proprietary economic terms relating to pricing and to specific payments and other benefits received from Freeman," and the confidentiality of the Freeman contract, is insufficient to create a trade secret. See Leavell, 220 F.3d at 567 ("Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination)"). See also Hollinger Int'l Inc. v. Hollinger Inc., 2005 WL 3177880, *2 (N.D.Ill.2005); In re Bank One Securities Litigation, 222 F.R.D. at 588. We also agree with Judge Mason that the terms of the Freeman contract can rightfully be deemed "confidential information" under the terms of the protective order. Reed's attached declarations assert that the terms of the contract were not available to the public and could adversely affect Reed's competitive advantages.

We turn now to Reed's internal and external audits. Reed points to several cases to suggest that audits are considered confidential. Robin v. Doctors Officenters Corp., 1986 U.S. Dist. LEXIS 16792 (N.D.Ill.1986) and Gohler v. Wood, 162 F.R.D. 691 (D.Utah 1995), however, both address the confidentiality concerns of the auditing firms. For example, in Robin, the court found that internal auditing and accounting manuals were proprietary and confidential in part because they were the product of much effort on the auditing firm's behalf. 1986 U.S. Dist. LEXIS 16792, at *3. In this case, Reed's auditing firm is not seeking to protect its work or effort; rather, Reed is attempting to shield its financial position from the public. Because we recognize that disclosure of confidential financial information to competitors may cause Reed great harm (Fieldturf Int'l Inc., v. Triexe Management Group, Inc., 2004 WL 866494, *3 (N.D.Ill.2004)), and that financial information is specifically contemplated in the definition of "confidential information" in the protective order, we decline to remove Reed's confidential designation from White's deposition regarding the internal and external audits at this stage.

We turn now to White's allegedly false testimony regarding Reed's internal assessment of its ownership of assets and other fiduciary obligations. Reed suggests that such information should remain confidential because it is likely to be used by trade associations to leverage their positions *vis a vis* Reed and would stand as the only evidence in the public record regarding this dispute. We begin by noting that while White's testimony could very well be damaging to Reed's professional relationships, we seriously doubt that all of the allegedly false testimony falls within the protective order's definition of "confidential information." The threshold for confidential information is information "not generally available to the public." And unlike Reed's averments that Reed employees are bound by confidentiality requirements regarding the terms of Reed's vendor contracts, including the Freeman agreement (Reed's response, exh. A, at ¶ 10), and Reed's audit reports (*id.*, exh. D, at ¶¶ 5-6), Reed has not evidenced that White

was under any general contractual or professional obligation not to publicly expose his views about Reed. After reading the deposition transcript, however, it is nearly impossible to parse out which pages of testimony evoke valid privilege because they discuss the Freeman contract or Reed's financials, and which do not. And because we have a substantial interest in preventing abuse of the discovery process (Coffie v. City of Chicago, 2006 WL 1069132, *3 (N.D.Ill.2006)), at this stage we retain the designated confidentiality of the White deposition. Once the deposition is entered into evidence, its invocation of valid trade secrets and other bona fide long-term confidentiality concerns should become clear, and much will likely be de-designated. See Baxter Int'l, Inc., 297 F.3d at 548 ("The strong presumption of public disclosure applies only to the materials that formed the basis of the parties' dispute and the district court's resolution").

Finally, we turn to White's testimony about Nepcon, which Reed has designated as "highly confidential." Because the relevance of the Nepcon testimony is unclear, much of the said testimony is hearsay, and plaintiff makes no argument that the Nepcon testimony should be de-designated, we decline to strike the "highly confidential" designation from the Nepcon testimony.

One final dispute remains unresolved, whether documents designated as "confidential information" must be filed under seal. The protective order seemingly answers that question in the negative. Paragraph 10 reads, in relevant part: "Documents and information designated as containing Highly Confidential Information shall be subject to the same restrictions as documents and information designated as containing Confidential Information, except that: ... (b) all such documents disclosed in any papers to be filed with the Court shall be filed under seal in accordance with the rules of the Court." See also ¶ 16. The protective order is quite clear that "confidential information" need not be filed under seal. Although Reed's suggestion

that filing a document on the court's electronic filing system may not be consistent with confidentiality is quite valid (Baella-Silva v. Hulsey, 454 F.3d 5, 11 (1st Cir.2006)), the deposition testimony will only be filed as part of the record at such time as AHMA seeks to use it as evidence. *See* L.R. 26.3. At that time, as we have noted above, the testimony will likely lose its designation as confidential. And if it does not lose its designation, Reed will be protected from mass distribution of the testimony due to the provision of the Protective Order requiring that all protected information, including "confidential information," be "used solely for the purposes of this litigation." We remind all parties that they are prohibited from disseminating protected information to gain any competitive advantage or negatively impact their opponents in the court of public opinion.

For the reasons stated above, we deny AHMA's motion for relief from protective order by declining to strike Reed's confidential designation of portions of White's testimony. We grant AHMA's motion so far as it requests that "confidential information" need not be filed under seal. As suggested by AHMA upon filing, parties should redact the specific numbers of the commissions paid by Freeman to Reed, and related figures.

　　　　　　　　　　　　　　　　　　　　　　　　　　　JAMES B. MORAN
　　　　　　　　　　　　　　　　　　　　　　　　　　　Senior Judge, U. S. District Court

May 14, 2007.