IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, ) ) ) Plaintiff, ) ) v. ) ) REED ELSEVIER, INC., *et al.*, ) ) Defendants. ) ) ──────────────────────── ) ) REED ELSEVIER, INC., a Massachusetts ) corporation, ) ) Counterplaintiff, ) ) v. ) ) AMERICAN HARDWARE ) MANUFACTURERS ASSOCIATION, ) a Delaware not-for-profit corporation, ) TIMOTHY S. FARRELL, and WILLIAM ) FARRELL, ) ) Counterdefendants. ) | No. 03 C 9421 Judge James B. Moran Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

There are two matters pending before the Court: (1) Reed's motion for protective order [dkt. 610]; and (2) Freeman's motion for a protective order[dkt. 607]. Both motions request the Court bar second Rule 30(b)(6) depositions of both Reed and Freeman. For the following reasons, the motions are granted in part and denied in part. Prior to taking any second depositions counterdefendant Timothy Farrell is directed to provide additional submissions to the Court by December 5, 2007, as

outlined herein.

I.   BACKGROUND

As background, plaintiff American Hardware Manufacturers Association ("AHMA"), a non-profit trade association in the hardware industry, brought this diversity action against: (1) Reed Elsevier, Inc.'s, specifically two of its divisions, Reeds Exhibitions and Association Expositions & Services (collectively referred to as "Reed"); and (2) Freeman Decorating Co. and Freeman Decorating Services, Inc., (collectively referred to as "Freeman"). The litigation arises from AHMA and Reed's relationship and involvement with the trade show known as the National Hardware Show. In 1981, defendant Freeman started working as the National Hardware Show contractor. Then, in 1998, Freeman began acting as a general service contractor at each of the trade shows that Reed owns and/or manages in the United States, including the National Hardware Show. Sometime in the late 1990s Reed and AHMA's relationship deteriorated and in 2003, both parties executed a separation agreement.

On July 21, 2006, AHMA filed its second amended complaint which includes allegations against Reed that it breached the various agreements between the parties, among other claims, and alleges a claim for civil conspiracy against Freeman. Reed and Freeman also each filed counterclaims against both AHMA and its president and CEO, Timothy Farrell, and its vice chairman and previous president and CEO, William Farrell (collectively "the Farrells"). The only claims implicating the Farrells are both Reed and Freeman's allegations of defamation *per se*.

II.   DISCUSSION

As an initial matter, Reed and Freeman dispute Timothy Farrell's 30(b)(6) deposition notices

as procedurally defective because he did not obtain leave of court. Reed and Freeman argue their corporate representatives have already been deposed in this case and, thus, Timothy Farrell's attempt to seek a second deposition requires him to first file a motion for leave pursuant to Federal Rule of Civil Procedure 30(a)(2)(B). Rule 30(a)(2)(B) provides that a party may take depositions of any person without leave of court unless "the person to be examined has already been deposed in the case."[1] The Court agrees that leave of court is indeed required where multiple depositions are sought, whether those depositions are of corporations or individuals. In this case, however, the dispute does not end there.

This case has a long history of discovery disputes that now spans three magistrate judges. On August 10, 2007, Judge Mason required all parties to submit their final deposition schedule for "ALL" remaining fact witnesses, which they have done. That deposition schedule includes the additional depositions of Reed and Freeman at issue here. The Court also notes that apparently the only Reed executive deposed in his individual capacity, that has been completed, is Gregg Vautrin. At least two Reed executives have been initiated, as evidenced by the exhibits attached to Timothy Farrell's response and, according to Timothy Farrell, nine previously noticed Reed executives have not yet begun. Timothy Farrell also explains that the depositions of Freeman executive Donald Freeman is not yet complete, and the previously noticed depositions of other Freeman executives have not even begun. In fact, Timothy Farrell asserts, though fact discovery closes with no exception on February 8, 2008, at least 45 depositions remain open and only 10 depositions are fully concluded.

---

[1] Fed.R.Civ.P. 30(a)(2)(B).

The Court recognizes that Timothy Farrell should have requested leave from the Court before noticing a second deposition for Reed or Freeman. The Court does not, however, see Timothy Farrell's conduct as an attempt to thwart the Federal Rules. In fact, the status of this case makes it unclear whether leave of court was even necessary. As noted, only one Reed executive has even been deposed at this point and only one Freeman executive's deposition was initiated. The Advisory Committee Notes to the 1993 Amendment to Rule 30(a)(2)(B) provide that the requirement to obtain leave of court does not apply when a deposition was simply not completed.[2] Logically this follows because in that situation, technically, there is no second deposition of the individual, there is simply a renewal of the same deposition. Here, there appear to be several depositions that have yet to be completed or even initiated. Thus, in light of the confusing status of this case, the Court refuses to bar Timothy Farrell from proceeding with the scheduled depositions solely on the basis of his failure to request leave of court. At this time, it is simply unclear to the Court whether Timothy Farrell actually seeks to take a second deposition of any witness.

As with many discovery disputes, the trial court has the discretion to determine whether a party may take a second deposition.[3] However, "[t]he party opposing the deposition must demonstrate "good cause" for a protective order."[4] Here, Reed and Freeman assert Timothy Farrell should not be allowed to take the depositions at issue because they will be cumulative and they argue the topics raised now should have been raised before. The court has the ability to limit discovery if it determines that: (1) the discovery sought is unreasonably cumulative; (2) the party seeking

---

[2] Advisory Committee Notes, 146 F.R.D. 401, 662.

[3] See Perry v. Kelly-Springfield Tire Co., Inc., 117 F.R.D. 425, 426 (N.D. Ind. 1987).

[4] Perry, 117 F.R.D. at 426.

discovery has had ample opportunity to obtain the information sought; or (3) the expense or burden of the proposed discovery outweighs its likely benefit.[5] This Court is aware that unfettered discovery of corporate executives may "threaten disruption of their business and could serve as a potent tool for harassment in litigation."[6] Nonetheless, Rule 26(b)(1) is broad and allows for discovery of all relevant evidence.

The Court agrees that Timothy Farrell, as a separate party in the litigation, has a right distinct from AHMA to defend himself and conduct Rule 30(b)(6) depositions. Any material relating to those claims against Timothy Farrell specifically (*i.e.*, the defamation *per se* claims), therefore, are allowed to be addressed at future depositions. Unfortunately, none of the 9 deposition topics listed in the notice served upon Freeman appear to relate to the claims against Timothy Farrell specifically. Of the 22 categories found in the notice served upon Reed, only number 22 appears to relate to the Farrells: "[c]ommunications by, among or between Reed and Gerard Vander Shauw, Deborah Robinson, Tom Kraeulter, Mary Catherine Biondi, and/or Kathy Bergen related to the Show, AHMA, W. Farrell, or T. Farrell."

Regarding the remaining categories, the Court agrees with Reed and Freeman that Timothy Farrell should not be allowed to re-question Reed or Freeman executives on any of the topics covered in previous testimony. This rule applies except where necessary to elicit new testimony, on

---

[5] Fed.R.Civ.P. 26(b)(2); *see also Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y. Mar. 6 1997).

[6] *Tri-Star Pictures, Inc.*, 171 F.R.D. at 102.

new claims and issues, such as those raised in the counterclaims filed by both Reed and Freeman.[7] The problem in this case, however, is that it is unclear from the parties' submissions to the Court which specific categories (from the 22 categories listed in the Reed notice and the 9 listed in the Freeman notice) have already been covered in previous depositions. Though Reed attaches a document to its motion that lists witnesses already deposed in one column, with the topic numbers covered in another column (corresponding to the categories in Timothy Farrell's 30(b)(6) notice), Reed does not support its position with reference to any actual deposition testimony. A more specific showing is required to convince the Court that these noticed depositions, in fact, will be unreasonably cumulative. It is also unclear which Reed or Freeman witnesses will actually be *re-deposed,* as opposed to deposed for the first time, because several Reed and Freeman depositions have not yet been initiated. Finally, the parties did not provide the Court with a time line of when the Reed and Freeman depositions took place as compared to when the specific claims against the Farrells were filed (*i.e.,* the counterclaims). Such a time line is important to determine whether redepositions of certain witnesses may be warranted due to, for example, newly pleaded allegations.[8]

Timothy Farrell admits, in his response, that AHMA has already questioned certain Reed and Freeman executives on "a number of the enumerated topics," but simply argues those deponents answered inconsistently or claimed ignorance. Timothy Farrell refers the Court to portions of deposition testimony of several former Reed and Freeman executives to support his position.

---

[7]*See Tri-Star Pictures, Inc.,* 171 F.R.D. at 102-103(holding that the defendant could not re-depose a witness regarding any topics previously covered, except to elicit "new testimony regarding new claims and issues..." raised in the third-party defendants' amended answer).

[8]The Court notes it is unlikely new pleadings would warrant redeposing any witness considering that Mr. Vautrin, the one principal witness for Reed whose deposition has been completed, was deposed in 2006, long after the counterclaims were filed.

Nonetheless, reference to these 2 to 3 page excerpts, which consist mostly of objections, do not alone show that a "substantial need" exists for Timothy Farrell to re-depose the same witnesses on topics already covered. Without a clear showing of substantial need by Timothy Farrell, the Court is not inclined to allow witnesses to be redeposed on matters that were already addressed in previous depositions.[9] Still, the Court is uncertain whether Timothy Farrell is actually seeking to *redepose* any witness or whether he is merely seeking to add more deposition topics to the already scheduled depositions.

In light of the confusing nature of the case, the Court requests the parties provide additional information. Timothy Farrell has the burden to explain to the Court the reason why the categories of topics enumerated in his 30B(b)(6) notices were previously not covered (if they were in fact not covered) and he should clearly state which witnesses will be re-deposed (if witnesses will in fact be re-deposed). Timothy Farrell should, thus, identify each particular witness he wishes to re-depose, if any, provide the Court with the general questions he will ask of the witness, and give the reasons for not asking those questions in the previous deposition. For example, if Timothy Farrell is principally relying on newly disclosed documents which he believes necessitates the redeposition of a particular witness, he should state such and convince the Court that a redeposition of the particular witness will lead to relevant evidence relating to only the issues raised by Reed and Freeman's counterclaims.

As a final matter, Reed objects to categories 6, 7, 10, 11, and 12, relying on Judge Mason's

---

[9]*See Lakewood Eng'g and Mfg. Co. v. Lasko Products, Inc.*, No. 01 C 7867, 2003 WL 1220254 (N.D. Ill. March 14, 2003)(finding that the court is "generally opposed to redeposing witnesses absent a clear showing of substantial need by the movant.").

August 27, 2007 order. Reed claims that order held any information regarding trade shows or associations unrelated to the National Hardware Show or plaintiff to be irrelevant. Reed misreads Judge Mason's ruling. Judge Mason held William Farrell was barred from pursuing depositions of certain non-party trade associations, specifically the National Shooting Sports Foundation and the Vision Council of America. Judge Mason did not hold that the parties were barred from asking any questions relating to other trade shows or associations. Rather, his ruling simply addressed the "uphill battle" AHMA and the Farrells would face in convincing the Court that depositions of nonparty trade associations would be relevant. Therefore, Reed's objections to the Rule 30(b)(6) deposition topics, on this basis, are overruled.

III. CONCLUSION

For the foregoing reasons Reed and Freeman's motions are granted in part and denied in part. Prior to proceeding with any of the noticed depositions at issue here, Timothy Farrell is to provide an additional submission to the Court that outlines the above requested information by December 5, 2007. Consistent with Judge Mason's previous order, all filings are limited to 7 pages. The case is set for further status on December 12, 2007 at 9:30a.m.

**IT IS SO ORDERED**

ENTERED: 11-21-07

UNITED STATES MAGISTRATE JUDGE