

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AMERICAN HARDWARE ) | |
| MANUFACTURERS ASSOCIATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 03 C 9421 |
| ) | |
| REED ELSEVIER INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Hardware Manufacturers Association ("AHMA") brought this diversity action against defendants Reed Elsevier, Inc., two of its divisions, Reed Exhibitions and Association Expositions & Services (collectively "Reed"), and Freeman Decorating Co. and Freeman Decorating Services, Inc. (collectively "Freeman"), alleging 13 counts, including common law and statutory fraud, civil conspiracy, breach of contract and violations of the Lanham Act. We have twice entertained defendants' motions to dismiss AHMA's complaint, the result being that only one count remains against Freeman. *See* American Hardware Manufacturers Association v. Reed Elsevier, Inc., 2004 U.S. Dist. LEXIS 28007 (N.D. Ill. Dec. 28, 2004) ("AHMA I"); American Hardware Manufacturers Association v. Reed Elsevier, Inc., 2007 U.S. Dist. LEXIS 10603 (N.D. Ill. Feb. 13, 2007)("AHMA II"). Freeman now moves for judgment on the pleadings as to this remaining count, for civil conspiracy.

## BACKGROUND

This case has a long and tortured history, evinced by the fact that after more than four years it has just now reached the judgment on the pleadings stage. For the sake of brevity we will delve into that history only to the extent relevant to this motion.

In 1977, AHMA entered into an agreement with Reed to sponsor the National Hardware Show ("NHS"), a trade show held in Chicago. That agreement was extended a couple of times, the latest extending the contract until 2009. In 1998, Reed entered into a national contract with Freeman, making Freeman the general contractor for the NHS and a number of other trade shows that Reed produced around the country. In consideration for this national deal, Freeman placed provisions in the contract stating that it would provide free "decor packages" at certain shows, including the NHS. AHMA alleges that these discounts were actually "kickbacks" and "barter exchanges." Freeman, in turn, recouped this money by charging NHS exhibitors more for certain items, including furnishings and labor, through a practice known as "cost-shifting."

By 2001, NHS exhibitor attendance began to wane, allegedly due to the high cost of exhibiting. AHMA contacted Freeman directly to inquire about the exhibitor rates, and the CEO of Freeman responded in a letter disclosing Freeman's cost-shifting practice. This letter included a trade publication article in which a Freeman representative discussed the practice and its use in the industry. After receiving this letter, AHMA requested and received a meeting with Reed and Freeman to discuss the practice. AHMA requested that Reed use another general contractor, but Reed refused, stating that it had entered into a multi-year agreement with Freeman through 2009. AHMA severed ties with Freeman and engaged another general contractor for the 2002 and 2003 shows. On February 26, 2003, after determining that the parties were incompatible, AHMA and Reed entered into a separation agreement effective August 16, 2003.

AHMA subsequently filed a complaint against Reed alleging, among other things, breach of contract of both the show agreement and the separation agreement, unjust enrichment, fraud, violation of the Illinois Consumer Fraud Act (ICFA), and civil conspiracy.

Reed moved to dismiss, but before that motion was ruled upon AHMA was granted leave to file an amended complaint, which included Freeman as a defendant to three of AHMA's claims: violation of the ICFA, unjust enrichment, and civil conspiracy. There were also new claims against Reed, including a breach of fiduciary duty claim. Reed and Freeman moved to dismiss the amended complaint – a motion we granted in part. AHMA I, 2004 U.S. Dist. LEXIS 28007. We dismissed several claims, including the ICFA and unjust enrichment claims against Freeman. We denied defendants' motion to dismiss the civil conspiracy claim, finding that it was sufficiently pleaded. AHMA then filed a second amended complaint, with civil conspiracy being the only remaining count alleged against Freeman. Reed moved to dismiss three counts of that complaint: the breach of contract and breach of fiduciary duty claims, and the fraud claim. Freeman joined the motion to the extent that the civil conspiracy claim was implicated. We granted defendants' motion as to the breach of contract claim, and denied it as to the other two claims, finding both pleaded adequately. AHMA II, 2007 U.S. Dist. LEXIS 10603. Both defendants answered the second amended complaint, and Freeman now moves for a judgment on the pleadings as to Count III, civil conspiracy.

## DISCUSSION

Federal Rule of Civil Procedure 12(c) states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Just as in a motion to dismiss under 12(b)(6), we must take the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 633 (7th Cir. 2007). The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), and must give the defendant fair notice of the claim and the grounds upon which it rests. "Factual allegations must be enough to raise a right to relief above the speculative level." Bell

Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). Where averments of fraud are made, the allegations must satisfy the heightened pleading standard of Rule 9(b). Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502 (7th Cir. 2007). This includes claims that are premised on fraud, such as the civil conspiracy alleged here. *Id.*; *but see* Martinez v. Freedom Mortgage Team, Inc., 527 F. Supp. 2d 827 (N.D. Ill. 2007).

Freeman argues that Count III should be dismissed because under the Supreme Court's Twombly decision, AHMA's allegations do not raise its conspiracy claim "above the speculative level." 127 S.Ct. at 1970. AHMA argues that this count is governed by Rule 9(b), and thus the Court's pleading analysis in Twombly is inapposite. We agree. In AHMA I, we specifically held that the civil conspiracy allegations satisfied the heightened pleading standard of Rule 9(b). 2004 U.S. Dist. LEXIS 28007. Since we held that AHMA's claim satisfied the heightened pleading standard, it necessarily satisfied the standard under Rule 8(a) addressed in Twombly.[1]

Freeman argues that a party cannot be held liable for conspiracy where it is legally incapable of committing the underlying tort. Freeman asserts that it cannot be liable for a conspiracy to commit fraud, premised on its failure to disclose the Reed/Freeman contract to AHMA, since AHMA has not alleged that Freeman had a duty to disclose. We find Freeman's logic lacking. There is a stark difference between legal impossibility and factual deficiencies in a pleading, and the failure to adequately plead fraud directly against Freeman does not mean that Freeman is legally incapable of committing fraud. *See e.g.* Watkins v. Penn, 2007 U.S. Dist. LEXIS 87370 (S.D. In. Nov. 26, 2007)("...although the Appraiser Defendants' actions

---

[1]Freeman also argues that because its purpose for entering into the contract with Reed is just as consistent with innocent conduct as with guilt, AHMA has failed to state a claim for conspiracy under Twombly. We disagree. AHMA has made allegations as to Freeman's conduct and the motives behind it, and has also alleged the existence of an agreement – something missing in Twombly. Furthermore, whether conduct appears guilty or innocent is a factual issue. McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 140-41 (Ill. 1999)

*alone* might be insufficient to state a claim for fraud, their participation as coconspirators in a larger scheme to defraud the Plaintiffs might nevertheless give rise to an action for civil conspiracy against them.") Regardless, it does not matter that AHMA has not pleaded fraud against Freeman because it has adequately pleaded fraud against Reed and sufficiently pleaded a conspiracy between Reed and Freeman. Freeman need not engage in fraud itself in order to be held liable for conspiracy to commit fraud. Only one party to the conspiracy need commit an overt act resulting in a tort. <u>Adcock v. Brakegate, Ltd.</u>, 164 Ill. 2d 54, 63 (Ill. 1994).

Additionally, even if it could be found that Freeman was legally incapable of committing fraud, Freeman is incorrect in its assertion that one must be capable of committing the underlying tort to be liable in conspiracy. In support of this argument, Freeman cites two cases, <u>Doe v. Noe</u>, 293 Ill. App. 3d 1099 (Ill. App. Ct. 1997), and <u>The Illinois Traffic Court Driver Improvement Educational Foundation v. The Peoria Journal Star</u>, 144 Ill. App. 3d 555 (Ill. App. Ct. 1986). We find both cases unpersuasive. <u>Illinois Traffic Court</u> is distinguishable from this case. There, the court specifically held that the plaintiff had failed to plead the existence of an agreement between the allegedly conspiring defendants, and thus could not allege conspiracy between the various defendants. 144 Ill. App. 3d at 563. AHMA has alleged the existence of an agreement between Reed and Freeman (plf 2nd am. cplt. ¶¶55-56).

We find <u>Doe</u> to simply be an incorrect statement of Illinois law. In <u>Doe</u>, the plaintiff was alleging a conspiracy among a surgeon, the corporation under which he was an employee or agent, and the surgeon's partner, to "not reveal the HIV status of [surgeon] as to gain consent to care and treatment that the plaintiff would otherwise decline." 293 Ill. App. 3d at 1113. The court held that while a duty existed for a doctor to inform his patient of his HIV-positive status, this duty resided exclusively within the doctor/patient relationship. As such, the corporation and partner could not be liable for conspiracy because they had no duty to

disclose. The court in <u>Doe</u> cited no authority for the dismissal of the conspiracy claim on this basis, and we find none.[2]

There are certain well-established principles of conspiracy law, which include that a person "may be liable for conspiracy even though he was incapable of committing the underlying offense." <u>Salinas v. United States</u>, 522 U.S. 52, 64 (1997). The purpose behind this principle is clear – "the function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." <u>Adcock</u>, 645 N.E.2d at 894. Illinois courts have held that a party to a contract, while being legally incapable of tortiously interfering with its own contract, can nevertheless be held liable for conspiring with another to do so. <u>Regan v. Garfield Ridge Trust & Sav. Bank</u>, 220 Ill. App. 3d 1078, 1091 (Ill. App. Ct. 1991); <u>Blivas & Page, Inc. v. Klein</u>, 5 Ill. App. 3d 280, 286 (Ill. App. Ct. 1972); *see also* <u>Thermodyne Food Service Products, Inc. v. McDonald's Corp.</u>, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996). Similarly, the fact that a party may be legally incapable of committing fraud does not preclude a conspiracy claim premised on fraud.[3]

Like any principle of law, there are exceptions. For instance, a conspiracy cannot exist

---

[2]The Illinois Supreme Court vacated the holding in <u>Doe</u>, in light of its decision in another case that absent any evidence or allegation of actual exposure to HIV, a plaintiff cannot state a cause of action for fear of contracting AIDS. <u>Doe v. Noe</u>, 303 Ill. App. 3d 139, 141 (Ill. App. Ct. 1998). The Illinois Supreme Court did not address the lower court's dismissal of the conspiracy claim. However, another Illinois appellate court, faced with the same argument Freeman makes here, dismissed the conclusion in <u>Doe</u> as unique to the doctor/patient scenario, and refused to extend that holding to the employer/employee relationship. <u>McClure v. Owens Corning Fiberglas Corp.</u>, 298 Ill. App. 3d 591, 598 (Ill. App. Ct. 1998)(*rev'd on other grounds*, 188 Ill. 2d 102 (Ill. 1999)). The <u>McClure</u> court specifically declined to address <u>Doe</u>'s holding on its merits.

[3]Freeman does cite numerous cases from other jurisdictions holding that a co-conspirator must be legally capable of committing the underlying tort to sustain an allegation of conspiracy. *See* <u>BEP, Inc. v. Atkinson</u>, 174 F. Supp. 2d 400 (D. Md. 2001); <u>Bahari v. Countrywide Home Loans</u>, 2005 U.S. Dist. LEXIS 34741 (D. Md. 2005); <u>Applied Equip. Corp. v. Litton Saudi Arabia</u>, 28 Cal. Rptr. 2d 475, 480 (Cal. 1994); <u>Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc. Bankruptcy Estate v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 2002 U.S. Dist. LEXIS 3747 (S.D.N.Y. 2002); <u>Rentz v. Garlock</u>, 2003 WL 22762629 (Ga. Super. Ct. Oct. 14, 2003); <u>Valles v. Silverman</u>, 135 N.M. 91, 100 (N.M. App. 2003). Interestingly, the statement of law in all of the above cited cases can be traced back to one California case, <u>Applied Equip. Corp.</u>, which is in direct conflict with Illinois law on this subject. *Compare* 29 Cal. Rptr. 2d at 480 (party cannot be liable for conspiracy to tortiously interfere with its own contract) with <u>Regan</u>, 220 Ill. App. 3d at 1091 (party can be liable for conspiracy to tortiously interfere with its own contract).

between a corporation and its employees. <u>Bonanno v. La Salle & B. C. R. Co.</u>, 87 Ill. App. 3d

988, 995 (Ill. App. Ct. 1980). Nor can employees of a corporation conspire with one another.

<u>Van Winkle v. Owens-Corning Fiberglas Corp.</u>, 291 Ill. App. 165, 173 (Ill. App. Ct. 1997).

This is because the employees are agents of the corporation and thus their acts are considered

to be the acts of the principal – the corporation. <u>Bonanno</u>, 87 Ill. App. 3d at 995. Another

exception is that a victim, for whom a statute was intended to protect, cannot be liable for

conspiracy to violate that statute. For example, at common law, a woman under the age of

consent could not be a conspirator to her own statutory rape. <u>Gebardi v. United States</u>, 287

U.S. 112, 123 (1932) citing <u>Queen v. Tyrrell</u>, 1 Q. B. 710 (1894). Similarly, the Supreme Court

has held a woman cannot conspire to be transported over state lines in violation of the Mann

Act. <u>Gebardi</u>, 287 U.S. at 123. However, neither of these exceptions apply here. AHMA does

not allege that Reed and Freeman are in a principal/agent relationship, nor that Freeman is

the victim of Reed's alleged fraud. Thus, general rule applies and Freeman's possible legal

incapacity does not prevent it from being charged with conspiracy.

Finally, Freeman argues that it is protected by the Illinois Fiduciary Obligations Act,

760 ILCS 65/2, ("IFOA") which provides:

> A person who in good faith pays or transfers to a fiduciary any money or other
> property which the fiduciary as such is authorized to receive, is not responsible
> for the proper application thereof by the fiduciary; and any right or title
> acquired from the fiduciary in consideration of such payment or transfer is not
> invalid in consequence of a misapplication by the fiduciary.

We find Freeman's application of this statute a stretch. "The purpose of the Act is to facilitate

the fiduciary's performance of his responsibilities by limiting the liability of those who deal

with him, and to cover situations which arise when one person honestly deals with another

knowing him to be a fiduciary." <u>Appley v. West</u>, 832 F.2d 1021, 1031 (7th Cir. 1987)(citing to

an earlier version of the statute). Courts in Illinois have routinely applied this statute to banks

and trustees. <u>Mikrut v. First Bank of Oak Park</u>, 359 Ill. App. 3d 37 (Ill. App. Ct. 2005); *see also* <u>Cont'l Cas. Co. v. Am. Nat'l Bank & Trust Co.</u>, 329 Ill. App. 3d 686, 702 (Ill. App. Ct. 2002); <u>Time Savers, Inc. v. LaSalle Bank, N.A.</u>, 371 Ill. App. 3d 759, 768 (Ill. App. Ct. 2007). It has generally been used to "relieve[] a depository bank of the duty of seeing that funds are properly applied." <u>Mikrut</u>, 359 Ill. App. 3d at 48. Freeman fails to cite to any case applying the IFOA to a situation similar to this case, and we hold that it was not intended to apply to cases such as this. Freeman is not alleged to have been paying money to Reed as a fiduciary, nor seeking proper application of that money to AHMA. Reed is not alleged to be an intermediary between Freeman and AHMA. Reed is a party to a contract with Freeman that allegedly relates to a contract entered into by Reed and AHMA. The fact that AHMA alleges Reed owed it a fiduciary duty does not imply that Freeman used Reed as AHMA's fiduciary. Therefore the IFOA is not applicable.

Even if Freeman could apply the IFOA to this case, AHMA has sufficiently pleaded Freeman's violation of that act. "A plaintiff may recover under the Fiduciary Obligations Act if he can prove (1) that the bank had actual knowledge of the fiduciary's misappropriation of the principal's funds, or (2) that the bank had knowledge of sufficient facts that its actions in paying the funds amount to bad faith." <u>Time Savers, Inc.</u>, 371 Ill. App. 3d at 768. AHMA has pleaded that Freeman "knowingly and willfully assisted Reed in perpetrating their scheme to defraud. Freeman knew or had reason to know that its actions with respect to cost-shifting and paying kickbacks, its efforts to conceal these practices from AHMA and its members, and its material misstatements with respect to the inflated prices charged to exhibitors as a consequence of cost-shifting constitute fraud against AHMA and its members." (plf. 2nd am. cplt. ¶ 97). AHMA further alleges that even knowing this, "Freeman and other vendors paid Reed a portion of the money they received from the Show's exhibitors in the form of

commissions, rebates or kickbacks...." (*Id.* ¶ 87). Therefore, even if the IFOA applies, which we hold it does not, AHMA has sufficiently pleaded that Freeman knew Reed was misappropriating the funds, because Freeman was a party to the alleged scheme.

## CONCLUSION

For the foregoing reasons, Freeman's motion for judgment on the pleadings is denied.

James B. Moran
**JAMES B. MORAN**
Senior Judge, U. S. District Court

April 3 , 2008.