**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 03 C 9421 |
| REED ELSEVIER, INC., *et al.*, | ) ) | Judge James B. Moran |
| Defendants. | ) ) | Magistrate Judge Susan E. Cox |
| _____ | ) ) | |
| REED ELSEVIER, INC., a Massachusetts corporation, | ) ) ) | |
| Counterplaintiff, | ) ) ) | |
| v. | ) ) | |
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, a Delaware not-for-profit corporation, TIMOTHY S. FARRELL, and WILLIAM FARRELL, | ) ) ) ) ) ) | |
| Counterdefendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

There are three discovery matters before the court brought by defendants, Reed Elsevier, Inc. ("Reed") and Freeman Decorating Co. and Freeman Decorating Services, Inc., (collectively referred to as "Freeman") against plaintiff, American Hardware Manufacturers Association ("AHMA"): (1) Joint Motion for Leave to Conduct Limited Discovery Related to 2004 Research Commissioned by AHMA [dkt 761]; (2) Motion for Leave to Depose Peter Schwartz and Cordell Overgaard [dkt 763]; and (3) Reed's and Freeman's Joint Motion to Compel Houlihan Lokey to Produce Documents [dkt

766]. Discovery in this case closed, for the final time, on April 25, 2008. From the date of the initial discovery schedule, entered on January 12, 2006, the parties have requested and received discovery extensions ten times. Defendants now request additional extensions.

The motions before the Court today deal only with matters surrounding discovery, therefore, the facts of the underlying dispute in this case are largely irrelevant. They will only be briefly summarized as follows. The litigation arises from AHMA and Reed's relationship and involvement with the trade show known as the National Hardware Show. In 1981, defendant Freeman started working as the National Hardware Show contractor. Then, in 1998, Freeman began acting as a general service contractor at each of the trade shows that Reed owns and/or manages in the United States, including the National Hardware Show. Sometime in the late 1990s Reed and AHMA's relationship deteriorated and in 2003, both parties executed a separation agreement. AHMA's complaint alleges that Reed breached the various agreements between the parties, among other claims, and alleges a claim for civil conspiracy against Freeman. Reed and Freeman also each filed counterclaims.

**I.     Joint Motion for Leave to Conduct Limited Discovery Related to 2004 Research Commissioned by AHMA [dkt 761]**

In this motion, defendants Reed and Freeman request a limited deposition of Randy Gross, a former employee of eBrain, and request documents from the Consumer Electronic Association ("CEA"), the parent company to eBrain. In 2004, eBrain conducted a Competitive Evaluation survey on AHMA's behalf, of which Mr. Gross was the lead analyst. Defendants claim that the CEA Rule 30(b)(6) witness, Timothy Herbert, was not able to fully answer questions on the topic of the survey because CEA did not contact Mr. Gross prior to the deposition, which, according to defendants, was because AHMA was attempting to thwart defendants' investigation.

On April 16, 2008, after argument on this precise issue, the Court recommended that defendants simply attempt to interview Mr. Gross. Defendants contend that they, in fact, repeatedly tried to do so. But defendants claim that Mr. Gross has refused to be interviewed because he fears AHMA will claim that he breached his confidentiality obligations.

What defendants, however, failed to mention in their motion is that the Court also recommended that defendants ask Mr. Gross's attorney whether he had the information defendants were seeking. Specifically, during argument in open court the Court stated,

> it just seems like the only possible relevance this witness has at this point is to help you further or attempt to authenticate this document which you would like to use to address the competition point. If he doesn't have that, then this is just a complete waste of time ... if the lawyer comes back and says, you know what, he doesn't have anything else to add to what Mr. Herbert has already said, then I'm basically ordering a deposition which is pointless at a point in time when discovery is ... done.[1]

The Court then asked defendants to "do one more step" and contact Mr. Gross's attorney. Apparently defendants did this. AHMA attached to their response a May 14, 2008 letter confirming a conversation between Mr. Gross's attorney and defendants that stated Mr. Gross had "absolutely no recollection of any work he may have performed related to the 2004 AHMA Hardware Show ... and ... any competitive surveys that may have been prepared by eBrain related to that show." This letter appears to answer the precise question posed by the Court. Defendants argue that the letter provides no indication that Mr. Gross reviewed reports Reed's counsel provided to CEA to refresh his recollection and, thus, he may still have relevant testimony. But the Court refuses to take that leap. Attorneys are officers of the court and we take their word as sufficient. As stated by the very judge in this case, Judge Moran, "there will always be additional persons to interview and additional

---

[1] Transcript of Oral Argument at 21-22, *AHMA v. Reed Elsevier, Inc.*, 03 C 9421, April 16, 2008.

documents to discover... we must, however, put an end to discovery at some point..."[2] Therefore, because Mr. Gross's attorney has represented that Mr. Gross would not be able to provide any additional information that defendants seek, as this Court previously stated, there is no reason to extend the already over-extended discovery schedule for this deposition. With respect to defendants' document requests, specifically their request for: (1) written correspondence among and between CEA, eBrain, and AHMA relating to the survey; (2) CEA/eBrain accounting records showing billing for the survey; and (3) demographic and survey data collected by CEA, eBrain or AHMA relating to 2004 research performed on behalf of AHMA, the same principle applies. There is no such thing as perfect discovery and this case is no exception.

## II. Motion for Leave to Depose Peter Schwartz and Cordell Overgaard [dkt 763]

Up against an already closed discovery schedule and Judge Mason's previous ruling that the Court would "not consider any more motions for leave to take additional depositions," defendant Reed seeks leave to depose two additional individuals.[3] Reed explains that due to Judge Mason's admonition to engage in "targeted discovery," they did just that and dropped Peter Schwartz from its deposition list for the following reasons: (1) he was subject to the district court's subpoena power; (2) he was expected to cooperate with Reed in appearing at trial; and (3) other material witnesses resided outside the court's subpoena power. Mr. Schwartz, however, is now moving to New Jersey and will no longer be subject to the Court's subpoena power.

Reed argues that Mr. Schwartz is a key witness because AHMA alleges that Reed violated its non-compete agreement through its involvement with the National Hardware Show, and Mr.

---

[2] *Trading Tech. Intern, Inc. v. GL Consultants, Inc.,* 2007 WL 1468552, *1 (N.D. Ill. May 16, 2007).

[3] *See* Docket No. 578.

Schwartz was a former chief executive officer of the Home Builders Association of Greater Chicago ("HBAGC"), which was the local trade association that developed the Midwest Builders Show. Reed already has an Affidavit from Mr. Schwartz attesting that the Midwest Builders Show does not compete with the National Hardware Show, but now requests a deposition to preserve his testimony and argues good cause exists as a result of his impending move. AHMA argues, in response, that Reed has failed to establish good cause for Mr. Schwartz's deposition because discovery already closed, several times, and Mr. Schwartz has always cooperated with Reed so there is no reason to believe he will not continue to do so.

When considering limiting discovery, the court must evaluate factors such as timeliness, good cause, utility, and materiality.[4] As discussed above, the timeliness factor weighs against Reed in this matter. The Court also finds that Reed has not presented good cause to once again open up discovery. The benefit to Reed must be weighed against the cost and burden to all parties in the case. Here, Reed is essentially asserting, without any evidence to establish its position, that because Mr. Schwartz is moving he will no longer be cooperative. As AHMA notes, Mr. Schwartz has been cooperative for over three years. There is no reason to believe that he will not continue to be cooperative and Reed has not presented such to the Court. As stated with respect to Reed's request to depose Mr. Gross, with no indication that Mr. Schwartz will refuse to cooperate in the future, it is possible that ordering a deposition now would be an unnecessary burden.

It should be noted that the Court acknowledges that a discovery deadline should not prohibit, in every circumstance, the taking of a deposition. And many times the good cause shown could be

---

[4]*CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 993 (7th Cir. 2002).

a witness's move outside the court's subpoena power. This case, however, presents a long and arduous discovery period with multiple orders reminding the parties that "under no circumstances will the discovery deadlines be extended," and "the parties must carefully select who will sit for a deposition."[5] Because this case is one where, if the Court was not involved, discovery would never close, Reed's motion for leave to depose yet another witness, Mr. Schwartz, must be denied.

Reed's second request is for leave to depose Cordell Overgaard. Mr. Overgaard was counsel for Reed until the mid-1980s. Because one of the issues in this case is whether the relationship between Reed and AHMA is governed by a 1977 show agreement, Reed originally asked Mr. Overgaard if he had participated in the negotiation of the 1977 agreement. At that time, Mr. Overgaard did not recall participating, thus, Reed did not include him in its allotted deposition schedule. Very recently, however, on April 2, 2008 Reed discovered documents from the 1970s and 1980s indicating that Mr. Overgaard did participate in the 1977 agreement at issue. After reviewing those newly discovered documents, Mr. Overgaard recalls participating in the negotiations. So Reed now asserts his testimony is critical to the case. Reed contends Mr. Overgaard's deposition will not be cumulative or duplicative of other discovery because none of the witnesses deposed have been able to provide testimony regarding the specific negotiations based on their personal knowledge. Further, Reed argues because Mr. Overgaard is in his 70s and residing in Arizona, there is no assurance he will be available for trial.

AHMA's principle argument in response to this request is that the Court should not reward Reed for its production of documents eighteen months after the close of written discovery and again argues that there is no reason to believe Mr. Overgaard will not be available at trial. Here, the Court

---

[5]*See* Docket Nos. 388, 423.

disagrees. The Court finds no reason to believe that Reed's late discovery production was intentional, especially considering that it has now prejudiced Reed. The change in Mr. Overgaard's position, along with his age and location, warrant Reed taking his deposition at this time. The Court must stress, however, that this discovery extension is made with reservation and shall be limited to three hours (AHMA also to have three hours).

**III.   Reed's and Freeman's Joint Motion to Compel Houlihan Lokey to Produce Documents [dkt 766]**

In April 2008 defendants issued a subpoena to Houlihan Lokey Howard & Zukin Financial Advisors, Inc. ("Houlihan") for documents and to depose Houlihan. Houlihan is an investment banking firm retained by AHMA in 2003 to value Reed's interest in the hardware show for the purpose of assisting AHMA in determining whether to purchase Reed's interest in the show. The subpoena requested "all documents provided to [Houlihan] by AHMA, the National Hardware Show, International Hardware Week, Hardware Industry Week, the Show Agreement, or the report entitled 'Valuation of the National Hardware Show' dated March 21, 2002." AHMA's counsel, however, instructed Houlihan to withhold a document from its production claiming the document to be subject to the attorney-client privilege. It is that document which is at issue here: a November 16, 1983 letter sent by AHMA's outside counsel, Thomas A. Reynolds of Winston & Strawn, to AHMA (hereinafter referred to as "the Reynolds Letter"). Defendants argue that AHMA waived the attorney-client privilege because AHMA has not shown that the disclosure was truly inadvertent and because AHMA has not demonstrated, under the balancing test, that the privilege was not waived.

When AHMA engaged Houlihan to provide a valuation of Reed's interest in the hardware show, AHMA claims that it inadvertently produced the Reynolds Letter at the same time that it provided Houlihan with a copy of the 1977 agreement between AHMA and Reed.  AHMA did not

realize the Reynolds Letter had been disclosed until May 5, 2008. It was at that time that AHMA asserted that communications between AHMA and Houlihan - including the Reynolds Letter - were protected by the attorney-client privilege and requested that Houlihan withhold the letter from production. AHMA also argues that Houlihan was a member of AHMA's control group to assist AHMA in evaluating its legal alternatives vis-à-vis Reed and, therefore, any communications would be privileged for that reason alone.

Motions involving inadvertent production of claimed privileged documents requires a three-part inquiry.[6] The court must first determine whether the disputed document is, in fact, subject to the attorney-client privilege.[7] If the document is not privileged, the inquiry ends.[8] If the document is privileged, the court then determines if the production of the document was inadvertent.[9] Finally, if the document is found to be protected by the attorney-client privilege and was inadvertently disclosed, the next test is whether the privilege was, nonetheless, waived.[10]

### A.  Attorney-Client Privilege

The attorney-client privilege is designed to shield documents from discovery where those documents reflect communications between a client and her attorney.[11] The Seventh Circuit has defined the scope of attorney-client privilege to be: (1) where legal advice is sought; (2) from a professional legal advisor in his or her capacity as such; (3) the communications relating to that

---

[6] *Harmony Gold U.S.A., Inc. v. FASA Corp.,* 169 F.R.D. 113, 115 (N.D. Ill. 1996).

[7] *Harmony Gold U.S.A., Inc.,* 169 F.R.D. at 115.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Harmony Gold U.S.A., Inc.,* 169 F.R.D. at 115.

purpose; (4) made in confidence; (5) by the client; (6) are at his or her instance permanently protected; (7) from disclosure by the client or the legal advisor; (8) except where the protection is waived.[12] The privilege does not apply where the legal advice is accompanying business advice; however, legal advice is privileged where it is the predominant element in the communication.[13]

The Court has reviewed the Reynold's Letter *in camera* and determined that it is, in fact, a privileged communication. The letter confirms a conversation between AHMA and an attorney who was providing legal advice regarding certain contractual terms. It is, therefore, within the scope of protection.[14]

**B.    Inadvertent Disclosure**

The next step of the analysis requires the Court to determine whether the Reynolds Letter was inadvertently produced. "The party claiming the inadvertent disclosure has the burden of proving that the disclosure was truly inadvertent."[15] Courts look to the totality of the circumstances surrounding the production of the document at issue, such as the number of documents disclosed at one time and the procedures used to review the documents before they were produced.[16]

AHMA explains that it provided certain documents to Houlihan, which included the Reynolds Letter, to assist in its valuation of Reed's interest in the National Hardware Show. AHMA claims that the Reynolds Letter was simply maintained in the same file as the 1977 agreement and,

---

[12]*U.S. v. White,* 950 F.2d 426, 430 (7th Cir. 1991).

[13]*Harmony Gold U.S.A., Inc.,* 169 F.R.D. at 115.

[14]*See R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 2001 WL 1286727, *5 (N.D. Ill. Oct. 24, 2001)(finding that the legal advice a lawyer gives regarding contractual terms, and the legal implications of those contractual terms, is protected).

[15]*Id.* at 11.

[16]*Id; see also Sanner v. Brd of Trade of City of Chicago,* 181 F.R.D. 374, 378 (N.D. Ill. 1998).

thus, was mistakenly copied and produced with the 1977 agreement. Defendants, however, note that disclosure of the Reynolds Letter did not occur in the context of a voluminous document production to Houlihan but, instead, three copies were included in a production of only twelve documents.

There is no way to know whether the Reynolds Letter was truly disclosed to Houlihan inadvertently. Though AHMA also makes reference to the fact that it was in an agency relationship with Houlihan and, therefore, any disclosure to it would remain privileged, the Court does not have enough information to make that determination either. The fact that the Reynolds Letter was listed on AHMA's privilege log supports the position that the disclosure was inadvertent but it also appears that the letter sufficiently relates to the 1977 agreement, so it could have been turned over to Houlihan intentionally. For our purposes here, however, we will assume that the disclosure was inadvertent.

**C.   Waiver**

District courts apply three different tests when determining whether an inadvertent disclosure waives a document's privilege: (1) there is waiver when any document is disclosed; (2) if the disclosure was unintentional the privilege is not waived; and (3) the application of a balancing test to examine whether the disclosure affected a waiver.[17] The Seventh Circuit has not directly stated what test should apply but courts in this circuit generally apply the balancing test, "which provides maximum flexibility based on the individual facts of any case."[18] The balancing test looks at five factors to determine if there has been a waiver: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the

---

[17] *Sanner,* 181 F.R.D. at 379.

[18] *United States of Am. v. Nat'l Assoc. of Realtors,* 242 F.R.D. 491, 494 (N.D. Ill. 2007).

extent of the disclosure; and (5) the overriding issue of fairness."[19]

There is really no factor that weighs heavily in favor of AHMA. According to AHMA, it retained Houlihan in 2003. The Court must assume, then, that the documents were given to Houlihan back in 2003. But AHMA did not learn that it had inadvertently disclosed the Reynolds Letter until May 5, 2008 when it reviewed Houlihan's documents in response to Reed's third-party subpoena. The timeliness argument, therefore, hardly weighs in favor of AHMA, though AHMA claims that as soon as it learned that the letter was in Houlihan's possession, it immediately requested that Houlihan withhold production. AHMA also does not discuss any precautions it took to prevent the disclosure, other than its claim that the letter was mistakenly copied with the 1977 agreement because they were maintained in the same file. According to the parties, the letter appeared three times in a set of approximately twelve documents. It would seem that, had AHMA taken any precautions at all to prevent disclosure, it would have noticed the Reynolds Letter and removed it prior to production.

Regarding the extent of the disclosure, AHMA asserts that the Reynolds Letter was only disclosed to a single third party and, thus, it did not "open ... its files and then, as an afterthought, decide[] to claim privilege as to those documents later found to be harmful."[20] On this point the Court agrees. AHMA further notes that the Reynolds Letter is listed on its privilege log. Materials listed on a privilege log put the opposing party on notice that, should any document on the privilege log be produced, it would certainly be inadvertent.[21] But an argument can also be made to the

---

[19]*Harmony Gold U.S.A., Inc.,* 169 F.R.D. at 117.

[20]*Robertson v. Yamaha Motor Corp.,* 143 F.R.D. 194, 198 (S.D. Ill. 1992).

[21]*See In re Natural Gas Commodity Litig.,* 229 F.R.D. 82, 87 (S.D.N.Y. 2005).

contrary; "[i]t is axiomatic that a screening procedure that fails to detect confidential documents that are actually listed as privileged is patently inadequate."[22] Finally, AHMA argues that in fairness the letter should not be disclosed. AHMA explains that defendants have not relied upon, or even seen, the Reynolds Letter so they cannot claim any deprivation. Though this is true, this factor alone does not tip the balance in favor of AHMA. Under these circumstances, the Court finds that an analysis of all the factors weighs in favor of waiver. Houlihan, therefore, must produce the Reynolds Letter pursuant to the document request.

## IV. Conclusion

For the foregoing reasons, defendants' joint motion for leave to conduct discovery related to 2004 Research commissioned by AHMA is denied [dkt 761]. Reed's motion for leave to depose Peter Schwartz and Cordell Overgaard is denied in part and granted in part, with Reed and AHMA each allotted three hours to depose Mr. Overgaard only [dkt 763]. Finally, the Court finds that AHMA has not satisfied the detailed showing that is required to overcome waiver by inadvertent disclosure and, therefore, grants defendants' motion to compel Houlihan to produce the Reynolds Letter [dkt 766].

**IT IS SO ORDERED**

**ENTERED: June 16, 2008**

_____

UNITED STATES MAGISTRATE JUDGE

---

[22]*Harmony Gold U.S.A., Inc.,* 169 F.R.D. at 117.