

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AMERICAN HARDWARE     )
MANUFACTURERS ASSOCIATION,     )
     )
    Plaintiff,     )
     )
    vs.     )    No.   03 C 9421
     )
REED ELSEVIER, INC., et al.     )
     )
    Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff American Hardware Manufacturers Association filed objections to two discovery rulings by Magistrate Judge Cox. On June 16, 2008, Judge Cox determined that plaintiff waived attorney-client privilege on a document and ordered plaintiff to produce the document to defendants Reed Elsevier, Inc., Freeman Decorating Co., and Freeman Decorating Services, Inc. On July 9, 2008, Judge Cox declined to reconsider her earlier order. For the reasons stated below, we affirm both rulings.

## BACKGROUND

Because the matter presently before the court deals with discovery, we provide only a cursory background discussion and focus on the facts surrounding the relevant discovery action. Plaintiff brought this suit alleging breach of contract and other claims against defendant Reed Elsevier, Inc., and a claim for civil conspiracy against defendants Freeman Decorating Co. and Freeman Decorating Services, Inc. (collectively referred to as "Freeman"). Reed and Freeman each filed counterclaims. We referred this case to Magistrate Judge Levin for general pre-trial supervision. Since that time, the case has been transferred to several

magistrate judges, most recently Magistrate Judge Cox.

On April 3, 2008, defendant Reed issued a subpoena to third party investment banking firm Houlihan Lokey Howard & Zukin ("Houlihan"). In 2002, plaintiff retained Houlihan to assist it in determining whether to make an offer to purchase the National Hardware Show from defendant Reed. At some point in 2002, as part of that project, plaintiff gave Houlihan copies of a letter it had received from its outside counsel, Thomas A. Reynolds of Winston & Strawn, dated November 16, 1983 (hereinafter the "Reynolds Letter"). Houlihan responded to Reed's April 13, 2008, subpoena by making available various documents, but also indicated that it was withholding, at plaintiff's request, three copies of the Reynolds Letter that appeared in the requested documents.

When defendant Reed contacted plaintiff about the Reynolds Letter, plaintiff asserted that it was protected by attorney-client privilege. Defendant Reed, arguing that privilege had been waived when plaintiff distributed the letter to Houlihan, moved Judge Cox to compel production of the letter. On June 16, 2008, Judge Cox found that plaintiff failed to satisfy the detailed showing that is required to overcome waiver of privilege by inadvertent disclosure and granted the motion to compel. Plaintiff subsequently requested that she reconsider her decision, but she declined to do so. Plaintiff now objects to Judge Cox's orders.

<u>ANALYSIS</u>

I. <u>Standard of Review</u>

A district court may only set aside a magistrate judge's discovery rulings, including those regarding privilege issues, if they are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). For our purposes, a magistrate judge's finding is clearly erroneous when, although there may be some evidence to support it, we, after considering the entirety of the evidence,

are left with the definite and firm conviction that a mistake has been committed. Weeks v. Samsung Heavy Industries, Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997). Our review provides considerable deference to the magistrate judge. See Carr v. Allison Gas Turbine Div., General Motors Corp., 32 F.3d 1007, 1008 (7th Cir. 1994) (explaining that a reviewing court must distinguish the situation in which it "thinks" it would have rendered a different decision from the situation in which it is "firmly convinced" it would have done so, and reverse only in the latter instance).

## II. Judge Cox's Ruling

Plaintiff argues Judge Cox erred in two respects: her consideration of the timing of the disclosure to Houlihan and her consideration of whether the facts surrounding the disclosure showed that plaintiff waived the privilege. The first argument is a bit of a mystery. Plaintiff does not point to any specific error on the part of Judge Cox, and instead discusses the timing of the production of the Reynolds Letter to Houlihan. Plaintiff explains that it disclosed the Reynolds Letter to Houlihan before this litigation began, and suggests that if it had been mistakenly disclosed after litigation began, Federal Rule of Civil Procedure 26(b)(5)(B) would mandate its return to plaintiff. Essentially, plaintiff argues that "[t]he unfortunate timing of the disclosure should not result in waiver" (Pl.'s Mot. at 5) and that "[t]o hold otherwise would afford greater protection to privileged documents produced after extensive attorney review than privileged documents inadvertently produced in the ordinary course of business" (id. at 7).

Judge Cox's decision did not rely on the whether the disclosure took place before or after litigation began—nor should it have. Rule 26(b)(5)(B) provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim must notify

any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information *until the claim of privilege is resolved*; must take reasonable steps to retrieve the information if the party disclosed it before being notified; *and may promptly present the information to the court under seal for a determination of the claim.* The producing party must preserve the information *until the claim is resolved.*

Fed. R. Civ. P. 26(b)(5)(B) (emphasis added). The Rule does not, as plaintiff suggests, forbid the use of any material that was inadvertently disclosed during discovery for which privilege is claimed. The rule instead sets up procedures to prevent the use of such material until the claim of privilege is resolved. *See id.* advisory committee's note (2006 Amendment) ("Rule 26(b)(5)(B) does not address whether the privilege or protection that is asserted after production was waived by the production. The courts have developed principles to determine whether, and under what circumstances, waiver results from inadvertent production of privileged or protected information."). Thus, defendants followed the proper procedure here by requesting that the court make the determination as to whether the material was privileged, and it was not error for Judge Cox to undertake that determination.

We turn now to plaintiff's second argument, that Judge Cox incorrectly determined that plaintiff waived privilege on the Reynolds Letter by producing it to Houlihan. Courts in the Northern District of Illinois employ a three-part analysis when reviewing claims of privilege. First the court determines whether the disputed document is privileged. If so, the court next determines whether the disclosure was inadvertent. If the first two questions are answered in the affirmative, the court must then determine whether privilege was waived. Judson Atkins Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 387-88 (7th Cir. 2008) (internal citations omitted).

None of the parties disputes Judge Cox's determination that the Reynolds Letter is

subject to attorney-client privilege. Judge Cox next determined that there was "no way to know whether the Reynolds Letter was truly disclosed to Houlihan inadvertently" (June 16, 2008 Order at 10). She therefore assumed, for the purpose of her analysis, that plaintiff's disclosure was inadvertent. Defendants argue that Judge Cox should not have given plaintiff the benefit of the doubt on this issue because it was plaintiff's burden to prove the disclosure was inadvertent and plaintiff put forth no such evidence (Def.'s Resp. at 5-6). Plaintiff objects to such an argument, asserting that the inadvertence of plaintiff's production of the Reynolds Letter is not an issue currently before this court.

The party claiming an inadvertent disclosure has the burden of proving that the disclosure truly was inadvertent. Harmony Gold U.S.A., Inc. v. FASA Corp., 169 F.R.D. 113, 116 (N.D. Ill. 1996). In order to determine if a disclosure was inadvertent, courts look to the totality of the circumstances surrounding the production of the privileged documents. Sanner v. Bd. of Trade of the City of Chi., 181 F.R.D. 374, 378 (N.D. Ill. 1998) (citing Harmony Gold, 169 F.R.D. at 116). In this case, the relevant disclosure is the disclosure from plaintiff to Houlihan. We share Judge Cox's concern that plaintiff failed to meet its burden. However, because we agree with Judge Cox that, even if the disclosure was inadvertent, plaintiff waived privilege, we find it unnecessary to examine this point. We, like Judge Cox, give the plaintiff the "benefit of the doubt," and proceed to the third step of the analysis.

Even if we assume the disclosure was inadvertent, we cannot say that Judge Cox erred in her determination that plaintiff waived attorney-client privilege. Judge Cox carefully applied the balancing test embraced by the courts in this circuit. See Judson Atkins, 529 F.3d at 388. The test includes five factors: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery; (4) the

extent of disclosure; and (5) the overriding issue of fairness." *Id.* at 388-89 (quoting Harmony Gold, 169 F.R.D. at 117 ).[1] We agree with Judge Cox that no factor weighs heavily in favor of plaintiff and conclude that she did not clearly err when she balanced the factors and determined that plaintiff waived privilege as to the Reynolds Letter.

The most significant factor in this instance is the reasonableness of the precautions taken to prevent disclosure. Plaintiff has provided us with no factual basis on which to evaluate its precautions other than to say that William Farrell, plaintiff's Vice Chairman and former President and Chief Executive Officer, did not expect or authorize the Reynolds Letter to be turned over to Houlihan. Even if we assume Farrell's statement to be true, plaintiff still fails to explain what specific precautions were taken to prevent disclosure of the letter. "Attorney-client privilege is not an absolute, eternal shield; a client who does not safeguard the confidentiality of communications that would otherwise be protected waives the privilege and subjects the communications to compelled disclosure." R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc., 2001 WL 1571447, at *2 (N.D. Ill. Dec. 7, 2001) (citing United States v. White, 950 F.2d 426, 430 (7th Cir. 1990)). Furthermore, the fact that the letter was disclosed to Houlihan three times in a set of approximately twelve documents demonstrates to the court that few precautions, if any, were taken to prevent disclosure of the letter.

We agree with Judge Cox's determination that the remaining factors do not tip the balance in favor of plaintiff. Plaintiff argues that it promptly tried to prevent further disclosure of the Reynolds Letter once it discovered the error. Even if we credit plaintiff's statement, the realization that the letter had been disclosed occurred approximately five years after the initial disclosure. We share Judge Cox's view that such timing "hardly weighs in

---

[1] Because the disclosure of the Reynolds Letter to Houlihan did not take place in the context of litigation, we, like Judge Cox, omit discussion of the third factor.

favor of" plaintiff. Further, as defendants point out, plaintiff has failed to present to the court any facts demonstrating that it tried to correct the inadvertent disclosure by subsequently retrieving the three copies of the letter from Houlihan.

We acknowledge that the Reynolds Letter was only disclosed to one third party,[2] that defendants have not yet seen the letter, and therefore have not relied on it. Those facts, however, are simply not enough to overcome the revelation that the letter was disclosed multiple times and that no precautions were taken to prevent such disclosure. Moreover, we have reviewed in camera the contents of the letter in question, and we find that plaintiff will not be unfairly prejudiced by its disclosure. As we stated earlier, this court's review is for clear error, and while plaintiff may cite to some facts supporting its position, there are also facts supporting Judge Cox's order, and Judge Cox should be accorded deference.

In a supplemental brief, plaintiff raises one additional argument. At various times during discovery–including the day that plaintiff filed its initial objection in this matter–defendants have notified plaintiff that they inadvertently produced privileged material to plaintiffs. Plaintiff represents that it consistently has complied with defendants' requests to return such material. It would be unfair, plaintiff argues, for the court to allow defendants to access its privileged material now.

The parties in this case have a history of difficulty in resolving discovery disputes and we are reluctant to make any statements that may be interpreted as discouraging the parties from working together during the discovery process. However we note that the prior incidents that plaintiff cites are not presently before the court. The circumstances surrounding those

---

[2] Plaintiff argues the extent of any disclosure to Houlihan was minimal. However, the deposition testimony they submit in support of this argument is far from conclusive. Kreg Jackson, Houlihan's Rule 30(b)(6) witness, testified only that he did not recall reviewing any document from 1983 relating to the 1977 agreement, and that with a better description of the document he might have been able to recollect (Jackson 5/28/08 Dep. at 49:14 - 50:20). Such testimony is hardly conclusive for the proposition plaintiff asserts.

incidents are unknown to the court, and therefore they play no role in our current analysis under the <u>Harmony Gold</u> balancing test.

In closing we note that we are perplexed as to why plaintiff has argued so strenuously to keep the Reynolds Letter confidential. As we stated earlier, we have reviewed the letter and we cannot see how plaintiff could be prejudiced by its release. To the extent that plaintiff is concerned that our ruling somehow will apply to future instances of inadvertent disclosure, we take this opportunity to reassure both parties that our ruling today is based on the circumstances surrounding the Reynolds Letter and therefore only applies to it.

## CONCLUSION

For the foregoing reasons, we affirm Magistrate Judge Cox's rulings and deny plaintiff's objections to those rulings.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

_____, 2009.

FEB 1 0 2009