# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 03 C 9421 |
| REED ELSEVIER INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

In 2003 plaintiff American Hardware Manufacturers Association (the "Association") filed suit against defendants Reed Elsevier, Inc., and two of its divisions, Reed Exhibitions and Association Expositions & Services (collectively "Reed") and Freeman Decorating Co. and Freeman Decorating Services, Inc. (collectively "Freeman"), stemming from an agreement it had with Reed to sponsor the National Hardware Show (the "Show"), a trade show held in Chicago until 2003. Freeman served as the general contractor for the Show. Before the court is a motion by the Association, William Farrell, and Timothy Farrell (collectively, "AHMA") to bar the rebuttal report and testimony of Freeman's expert. Unsurprisingly, Freeman objects and also asks for an award of the attorney's fees and costs it incurred in responding to the motion. For the following reasons, AHMA's motion to bar is granted and Freeman's request for fees and costs is denied.

## I. Background

### A. Facts

AHMA's initial complaint included three counts against Freeman, two of which (Count II, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act

("ICFA"), and Count VI, alleging unjust enrichment) were dismissed in 2004.  *See* Mem. Op. and Order, Dec. 28, 2004, Docket No. 61.  As a result, the only claim remaining against Freeman is for civil conspiracy under Illinois law.  AHMA's fraud and civil conspiracy claims against Reed remain.[1]

AHMA's second amended complaint ("SAC") alleges that both Freeman and Reed engaged in a "deceptive course of conduct" for the purpose of defrauding AHMA and obtaining monetary benefits.  *See* SAC at ¶¶ 103-104, 111.  The essence of the allegations is that, pursuant to a 1998 contract between Reed and Freeman, Reed hired Freeman as its general contractor for the annual Show through 2006 (later extended to 2009), in exchange for undisclosed kickbacks, free goods, and services from Freeman to Reed.  *See id.* at ¶¶ 54-55.  In order to recoup the money it paid to Reed, Freeman allegedly engaged in "cost-shifting," whereby it charged Show exhibitors more for certain items, and Reed allegedly "permitted and/or directed" Freeman to engage in this practice.  *See id.* at ¶ 59.  According to AHMA, the cost-shifting was a primary reason that exhibitor participation in the Show declined between 2001 and 2003.  *See id.* at ¶ 45.  AHMA further alleges that Freeman and Reed did not disclose their arrangement to it.

**B.     The Dueling Expert Reports: Litvak (AHMA) and Elson (Freeman)**

In the motion presently before the court, AHMA seeks to bar the rebuttal report and testimony of Freeman's expert, Craig T. Elson, arguing that the report misstates the law of civil conspiracy and will thus not assist the trier of fact as required under Fed. R. Evid. 702.  The

---

[1] Count I, alleging common-law fraud against Reed, remains in full.  Count II, alleging ICFA violations, remains only as to the allegation that Reed promoted the 2004 Las Vegas hardware show with AHMA's trademarks.

court's consideration of the propriety of Elson's report begins with a recap of the report to which he is responding. That report, by AHMA's expert Jeff Litvak, states that AHMA asked him to:

> 1) review and analyze documentation and related testimony involving Reed's accounting and financial reporting practices relating to payments made by Freeman to Reed . . . ; 2) Review and analyze related documentation and testimony in conjunction with Reed's actions during the time of the Freeman payments; 3) Calculate damages, if any, related to the payments from Freeman to Reed and Reed's profits from the Show over the relevant time period; and 4) Render an expert report.

Expert Report of I. Jeff Litvak, p. 1 ("Litvak report").

Litvak, a certified public accountant, focuses almost entirely on Reed's accounting practices and concludes that Reed should have recorded and reported the kickbacks and in-kind contributions from Freeman as revenue. According to Litvak, if Reed had done so, it would have owed AHMA a percentage of that revenue pursuant to Reed's contract with AHMA. Litvak then analyzes various Reed employees' explanations as to why these payments were not reported as revenue and discusses certain accounting principles. He concludes that the financial statements Reed provided to AHMA as required by their contract were "inaccurate, incomplete, and materially misleading." *Id.* at 67. Finally, he quantifies the damages and disgorged profits that Reed allegedly owes AHMA as a result of the allegedly improper payments and in-kind contributions.

Elson's rebuttal report contains two principal components: (1) a detailed evaluation of Litvak's report and (2) an analysis of whether Freeman's behavior harmed AHMA given the rates Freeman charged and other factors that purportedly contributed to the decline of exhibitor participation in the Show. Elson's thesis is that Litvak's report is flawed because it fails to assess

whether the defendants, and Freeman in particular, caused the economic harm AHMA allegedly suffered. Elson uses this causation argument to refute Litvak's assessment of AHMA's damages, but does not dispute Litvak's numbers or methodology.

## II. AHMA's Motion to Bar

For the following reasons, the court finds that Elson's report does not misstate the law, as AHMA contends. Nevertheless, the court finds Elson's report must be barred for two other reasons: it is neither a proper rebuttal to Litvak's report nor addresses the proper subject matter for expert testimony.

### A. Elson's Report is not a Proper Rebuttal

The major flaw with Elson's report is that it is not a proper rebuttal report because it does not address the same subject matter as Litvak's report and generally fails to respond to Litvak's report. Specifically, rebuttal evidence must contradict, impeach or defuse the impact of evidence offered by the adverse party. *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir. 2008). Thus, experts may submit rebuttal reports but must limit the contents of their reports to "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified" in another party's expert witness report. Fed. R. Civ. P. 26(a)(2)(C)(ii); *City of Gary v. Shafer*, No. 2:07-CV-56-PRC, 2009 WL 1370997, *5 (N.D. Ind. May 13, 2009) (plaintiff's expert report was proper because each opinion it contained rebutted the "same subject matter" as that contained in the report of the defendant's expert)*; Procter & Gamble v. McNeil-PPC, Inc.*, No. 08 C 251, 2009 WL 1351447, *4 (W.D. Wis. May 12, 2009) (striking paragraphs of expert

rebuttal report identified as "Supplementation of My Opinion on Infringement" because "rebuttal reports are limited to responding to the issues raised by the opposing parties' experts").

Here, Elson's report does not respond to Litvak's description of accepted accounting principles or the methodology Litvak used to conclude that Reed's accounting practices were materially misleading. Moreover, as AHMA points out, Elson's report is aimed at establishing that *Freeman's* alleged misconduct cannot be the but-for cause of harm to AHMA. Litvak's report, however, focuses almost exclusively on *Reed*, and contains virtually no discussion of Freeman's behavior.[2] In this respect, Elson's report fails to respond to Litvak's report.

Elson's report is also not a proper rebuttal because it overwhelmingly fails to challenge Litvak's analysis of Reed's accounting methods. Elson's general observation that the damages calculated by Litvak are too high is the closest Elson comes to rebutting Litvak's report. For example, Elson asserts in a single short paragraph that Litvak may have "over-quantifi[ed]" damages based on the interest rate Litvak used. *See* Rebuttal Report of Craig T. Elson ("Elson report") at 104. However, Elson does not provide any specifics supporting this statement or explain the methodology he used. Thus, his report does not meet the requirement of reliability under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005) ("As we so often reiterate: 'An

---

[2] Litvak notes briefly that Freeman accounted for the payments it made to Reed as a direct cost associated with each individual show. This practice, Litvak claims, refutes Reed's explanations of why it listed the payments as an offset rather than revenue. Litvak cites Freeman's practice to bolster his argument that Reed should have treated the payments as revenue. In other words, he argues that Freeman accounted for the payments correctly, but Reed did not. Given Litvak's emphasis on Reed's conduct, this passing reference to Freeman is not enough to make Elson's report responsive to Litvak's report.

expert who supplies nothing but a bottom line supplies nothing of value to the judicial process'")
(internal citation omitted).

      B.      **Elson's Report Does Not Address Proper Subjects for an Expert Report**

Rule 702 of the Federal Rules of Evidence and *Daubert* govern the admissibility of expert testimony in federal court. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006).

Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In turn, under *Daubert*, this court must function as a "gatekeeper" to "ensure the reliability and relevancy of expert testimony." *Id*. at 607, *quoting Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). To perform the gatekeeping function, the court must focus on the expert's methodology, *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000), and consider whether the expert's work is "reasoned, uses the methods of the discipline, and is founded on data," *Naeem*, 444 F.3d at 608, *quoting Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

Elson's rebuttal report falls short of the requirements of *Daubert* and Rule 702 for two reasons. First, Elson criticizes Litvak's opinion for failing to account for the fact that had AHMA ever discovered the kickback scheme, Freeman would have stopped paying kickbacks

and therefore AHMA would not have been entitled to a share. *See* Elson report at 22 ("Freeman's payments to Reed would have stopped upon disclosure to AHMA, [and] a very different damages analysis would have resulted.") Based on this analysis, Elson concludes that Litvak's assessment of AHMA's damages is too high.

The scenario Elson created—AHMA's discovery of the kickback scheme and Freeman's discontinuation of payments—is entirely speculative and not based on "specialized knowledge" as required under Rule 702. Although Elson examines some evidence in the record, he essentially attempts to poke holes in Litvak's logic. This is not something for which expert testimony is required. *See Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998) (internal quotations omitted) ("An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert."). This section of Elson's report is, therefore, inadmissible.

Second, Elson's examination of other factors that allegedly contributed to the decline is improper. For instance, he cites the impact of the Sept. 11, 2001 terrorist attacks, the consolidation of the hardware/home improvement industry, and the relatively high cost of holding a trade show in Chicago to debunk Litvak's theory that the Show's failure was entirely attributable to the increased prices that Freeman imposed on exhibitors. Elson's opinion, however, is speculative. More importantly, like the portion of the report discussed above, it is not based on any specialized knowledge. In addition, Elson's curriculum vitae indicates that he has expertise in damages analysis, but does not indicate that he is an expert in the hardware or

trade show industries. Elson may thus not testify about factors that purportedly were responsible for the decline in exhibitor participation in the Show. *See* Rule 702.

Elson also compares the rates charged by Freeman and its competitors for comparable trade shows in Chicago. To the extent that this is a proper subject for expert testimony (an issue which the court need not reach), as discussed above, it does not respond to the subject matter contained in Litvak's report. Therefore, it too is inadmissible.

Finally, portions of Elson's report contain legal conclusions, but "experts cannot make those." *See United States v. Diekhoff*, 535 F.3d 611, 619 (7th Cir. 2008). For instance, Elson argues that Freeman had no duty to disclose the payments to AHMA, and in fact had a duty not to disclose them pursuant to its contract with Reed. Not only is this argument unresponsive to Litvak's report, it is an improper and inadmissible legal conclusion. *See id.* For all of these reasons, AHMA's motion to bar Elson's report is granted.

## III. Freeman's Request for Attorney's Fees

Freeman asks the court to order AHMA to pay the attorney's fees and costs it incurred in responding to AHMA's motion, arguing that AHMA filed it in bad faith to distract Freeman. The court possesses an inherent equitable power to impose sanctions, including ordering that one party's attorney fees be paid when the opposing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). "Because these inherent powers are potent, they must be exercised with caution and restraint." *Schmude v. Sheahan*, 420 F.3d 645, 649-650 (7th Cir. 2005). The court finds that AHMA did not file its motion in bad faith, so Freeman's request for fees and costs is denied.

## IV. Conclusion

For the foregoing reasons, AHMA's motion to bar Elson's report and testimony [#927] is granted. Each party will bear its own costs related to this motion. The parties are also reminded that expert discovery closes August 31, 2009, pursuant to Magistrate Judge Cox's order. The parties should plan accordingly, as this is a firm date.

DATE: July 23, 2009

_____
Blanche M. Manning
United States District Judge