# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN HARDWARE | ) | |
| MANUFACTURERS ASSOCIATION, | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 CV 9421 |
| v. | ) | Judge Blanche Manning |
| | ) | |
| REED ELSEVIER, INC., *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

For about 25 years, plaintiff American Hardware Manufacturers Association and defendant Reed Elsevier, Inc. put on the premiere hardware trade show in the country, held each year in Chicago. But American Hardware came to suspect that Reed was scheming behind its back to procure kickbacks from its contractors, driving up costs and alienating exhibitors. American Hardware and Reed eventually decided to part ways and run competing shows. In the end, only Reed's show survived.

American Hardware has now sued Reed and two of its divisions (collectively "Reed"), as well as its general contractors, Freeman Decorating Co. and Freeman Decorating Services, Inc. (collectively "Freeman), for violating various agreements. Reed and Freeman responded with a variety of counterclaims against American Hardware and its former and current presidents, counter-defendants William and Timothy Farrell.

The parties have filed numerous motions for summary judgment. This order addresses two of those motions for summary judgment: one filed by former president William Farrell on Reed's counterclaim for defamation (Count XI) and Freeman's counterclaim for defamation (Count I); and the other filed by American Hardware and its current president, Timothy Farrell,

on Reed's counterclaim for defamation (Count I) and Freeman's counterclaim for defamation (Count I).  For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

In 1977, American Hardware entered into a written Show Agreement with Reed under which American Hardware sponsored and Reed managed an annual hardware show.  American Hardware alleges that the Show Agreement entitled it to "control and oversight of all decisions necessary for the success of the Show," including the ability to select the location of the hardware show and the right to share in the revenue from it.  *See* Second Amended Complaint ("SAC") at ¶ 18.

In 1998, Reed awarded a contract to Freeman to act as a general contractor, and help run the hardware and other trade shows.  According to American Hardware, Freeman agreed to pay Reed undisclosed kickbacks and barter exchanges to secure its contract.  In addition, Reed's contract with Freeman also allegedly required Freeman to provide Reed with free goods and services and to recoup its costs from show exhibitors.

The hardware show enjoyed increasing success until 2000, when demand for exhibit space began decreasing.  The parties dispute the reasons for the decline.  According to American Hardware, the decline was the result of the high costs to exhibitors of attending the hardware show.  According to the defendants, the show suffered from a combination of factors, including industry consolidation, the economic downturn, and reduced travel after the September 11, 2001, terrorist attacks.

In 2002, the parties discussed ending their relationship and, on February 26, 2003, entered into a separation agreement.  Under the separation agreement, the parties terminated their show

agreement after the 2003 hardware show and agreed to begin conducting their own separate

hardware shows.  However, their split proved to be less than harmonious and, on December 30,

2003, American Hardware sued Reed and Freeman for a variety of claims, including breach of

contract, civil conspiracy, and fraud.

Reed and Freeman responded in kind by filing various counterclaims for, among other

things, defamation.  Specifically, in Count I of its counterclaim, Reed alleges that American

Hardware and Timothy Farrell are liable for defamation based on:

1. American Hardware's January 16, 2004, press release which reported that Reed
   had (a) engaged in cost-shifting and kickbacks, (b) illegally used American
   Hardware's trademarks, (c) made false claims about registrants, (d) had not denied
   any of these allegations, and stated that (e) "Reed simply cannot compete at this
   level so it has resorted to illegal and unethical activity;"

2. Timothy Farrell's statements on January 18, 2004, to attendees of American
   Hardware's Executive Conference, in which he (a) repeated the allegations made
   in the complaint regarding kickbacks and conspiracy to defraud, and (b) stated
   that no one wants to work with a company that lies and cheats their partners and
   exhibitors;

3. An article in a special edition of American Hardware's publication *The Eagle*
   published in January 2004 which repeated Timothy Farrell's January 18, 2004,
   statements to the Executive Conference;

4. An article in the regular January/February 2004 edition of American Hardware's
   publication *The Eagle* which repeated the complaint's allegations of kickbacks
   and a conspiracy to defraud, as well as American Hardware's allegation that
   Freeman admitted to cost-shifting;

5. Timothy Farrell's May 28, 2004, e-mail to industry leaders to which Farrell
   attached a copy of the complaint which alleged kickbacks and conspiracy to
   defraud;

Reed's Amended & Supplemental Counterclaim [171-1] at ¶¶115-129.  As for William Farrell,

Reed alleges in Count XI that he is liable for defamation based on statements:

1. His January 8, 2004, letter to *Meeting News* reporter Donna Arioldi to which he attached a copy of the plaintiffs' complaint which alleged kickbacks and conspiracy to defraud;

2. His January 12, 2004, letter to General Tools chief executive officer Joe Ennis to which he attached a copy of the complaint which alleged kickbacks and conspiracy to defraud;

3. American Hardware's January 16, 2004, press release which reported that Reed had (a) engaged in cost-shifting and kickbacks, (b) illegally used American Hardware's trademarks, (c) made false claims about registrants, (d) had not denied any of these allegations, and stated that (e) "Reed simply cannot compete at this level so it has resorted to illegal and unethical activity;"

4. Timothy Farrell's statements on January 18, 2004, to attendees of American Hardware's Executive Conference, in which he (a) repeated the allegations made in the complaint regarding kickbacks and conspiracy to defraud, and (b) stated that no one wants to work with a company that lies and cheats their partners and exhibitors;

5. An article in special edition of American Hardware's publication *The Eagle* published in January 2004 which repeated Timothy Farrell's January 18, 2004, statements to the Executive Conference;

6. An article in the regular January/February 2004 edition of American Hardware's publication *The Eagle* which repeated the complaint's allegations regarding kickbacks and a conspiracy to defraud, as well as American Hardware's allegation that Freeman admitted to cost-shifting;

7. Timothy Farrell's May 28, 2004, e-mail to industry leaders to which Farrell attached a copy of the complaint which alleged kickbacks and conspiracy to defraud;

8. American Hardware's January 6, 2005, press release which repeated the complaint's allegations of kickbacks and conspiracy to defraud.

Reed's Amended & Supplemental Counterclaim [171-1] at ¶¶ 246-265.

Meanwhile, Freeman alleges in Count I of its counterclaim that American Hardware,

William Farrell and Timothy Farrell are liable for defamation based on:

1.    William Farrell's January 8, 2004, letter to *Meeting News* reporter Donna Arioldi to which Farrell attached a copy of the plaintiffs' complaint which alleged kickbacks and conspiracy to defraud;

2.    William Farrell's January 12, 2004, letter to General Tools chief executive officer Joe Ennis to which Farrell attached a copy of the complaint which alleged kickbacks and conspiracy to defraud;

3.    Timothy Farrell's statements on January 18, 2004, to attendees of American Hardware's Executive Conference, in which he (a) repeated the allegations made in the complaint regarding kickbacks and conspiracy to defraud, and (b) stated that no one wants to work with a company that lies and cheats their partners and exhibitors;

4.    An article in the January/February 2004 edition of American Hardware's publication *The Eagle* which repeated the complaint's allegations regarding kickbacks and a conspiracy to defraud, as well as American Hardware's allegation that Freeman admitted to cost-shifting;

5.    Timothy Farrell's May 28, 2004, e-mail to industry leaders to which Farrell attached a copy of the complaint which alleged kickbacks and conspiracy to defraud;

6.    Timothy Farrell's October 5, 2004, descriptions to a reporter for the *Chicago Sun-Times* of the allegations of the plaintiff's complaint, which were repeated in the article along with a quote attributed to Farrell in which he attributed the Chicago hardware show's decline to corruption; and

7.    American Hardware's January 6, 2005, press release which repeated the complaint's allegations of kickbacks and conspiracy to defraud.

Freeman's Counterclaim [173-1] at ¶ 34.

American Hardware and the Farrells have now moved for summary judgment on the defamation claims against them in Counts I and XI of Reed's counterclaim and Count I of Freeman's counterclaim.  The gist of their argument is that even if the statements alleged were defamatory, various privileges and immunities mean they are not liable.[1]

_____

[1]In an order issued contemporaneously with this one, the court held that American Hardware released Reed from liability for all conduct that occurred before February 26, 2003.

## II.     William Farrell's Motions to Strike[2]

As a threshold matter, in his reply brief William Farrell seeks to strike the declarations of two former American Hardware employees, Patricia Koszycki and Michael Alberts, submitted by Reed and Freeman in support of briefs opposing the motions for summary judgment.[3]  Farrell argues that the declarations are inadmissible because they are speculative and based on conclusory statements that are unsupported by specific facts, and that the Koszycki declaration should be struck for the additional reason that the defendants did not disclose her as a potential witness.

In general, affidavits may be submitted to support or oppose a motion for summary judgment as long as they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).  Rule 56 also requires that affiants address only those issues about which they have personal knowledge.  *Visser v. Packer Eng'g. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  Although personal knowledge encompasses inferences, and therefore opinions, those inferences must be substantiated by specific facts.  *Drake v. Minn. Mining & Mfg. Co.*, 134

---

*See* Memorandum and Order dated January 4, 2010 [1096-1] at 13.  The release does not, however, affect the viability of the claims at issue here because the alleged conduct post-dates the effective date of the release.

[2] These objections were made in William Farrell's reply brief.  The court granted the defendants leave to file a response, [980-1], which they did, [1055-1].

[3] The court notes that the counter-defendants have also attached to William Farrell's reply memorandum a document titled "Summary of Deficiencies in Reed and Freeman's Response to Counter-Defendants' Statement of Undisputed Facts."  Under Local Rule 56.1(a), such a filing is not permitted.  But even if the court were permitted to consider the "Summary of Deficiencies," nothing raised in that document would have affected the court's decision.

F.3d 878, 887 (7th Cir. 1998). Statements based solely on an affiant's own beliefs are inadmissible speculation. *Fulmore v. Home Depot, U.S.A., Inc.*, 423 F. Supp. 2d 861, 869 n.2 (S.D. Ind. 2006); *see also U.S. ex rel Robinson v. Northrop Grumman Corp.*, No. 89 CV 6111, 2002 WL 31109387, *5 (N.D. Ill. Sept. 20, 2002). For affidavits being used to lay a foundation for documents, the documents "must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) (citation and quotation omitted).

### A. Koszycki's Declaration

Koszycki was Timothy Farrell's executive assistant from 2000-2005. Her declaration is offered to authenticate the allegedly defamatory email that Timothy Farrell sent to hardware industry leaders on May 28, 2004, rebutting American Hardware's contention that the e-mail was never sent.

William Farrell seeks to strike the declaration because the defendants never disclosed Koszycki as a witness. However, under Federal Rule of Civil Procedure 26, disclosure was unnecessary because her testimony is offered to rebut American Hardware's contention that the email cannot be authenticated. "Rebuttal witnesses are oftentimes not known until after the trial is commenced because the need to call such a witness may not arise until the opposing party introduces an argument in issue or a fact during the course of the trial which must now, unexpectedly, be rebutted." *Matthews v. Commonwealth Edison Co.*, No. 93 CV 4140, 1995 WL 478820, at *3 (N.D. Ill. March 24, 1995).

American Hardware also argues that Koszycki's declaration should be stricken because her statements that the e-mail was sent are speculative. However, a cursory review of Koszycki's declaration reveals that she claims first-hand knowledge of the e-mail: she stated that she reviewed and filed it "after it was prepared and sent by Timothy Farrell to several people in the hardware industry." Koszycki Declaration [921-22], Ex. 148 at ¶ 3. Accordingly, the declaration is based on first-hand knowledge and admissible.

### B.    Alberts' Declaration

William Farrell's second motion to strike is aimed at the declaration of Michael Alberts, a former American Hardware employee who served as manager of events and expositions and, later, director of trade events. Farrell objects to portions of Alberts' declaration in which he recalls a variety of statements he heard William and Timothy Farrell make about Reed and Freeman. Farrell contends that Alberts' recollections are "conclusory," but the court has reviewed them and they are based upon statements William and Timothy Farrell allegedly made in Alberts' presence. Farrell's arguments that the recollections are conclusory is thus unavailing.

However, the court agrees with Farrell that Albert's recollection that William and Timothy Farrell "did not care if the allegations of unlawful conduct by Reed and Freeman were true or not because they were concerned about winning the hardware show battle against Reed" is merely speculation and is not based on any statement made by either Farrell. *See Fulmore*, 423 F. Supp. 2d at 869 n.2; *U.S. ex rel Robinson,* 2002 WL 31109387 at *5. Accordingly, this statement will be disregarded.

## ANALYSIS

### A.      Summary Judgment Standard

The court now turns to the arguments in favor of summary judgment made by William Farrell, Timothy Farrell and American Hardware.  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The evidence is viewed in the light most favorable to the nonmoving party; the court will not make credibility determinations or weigh evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The party that bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must demonstrate affirmatively that there is no genuine issue of material fact that requires a trial to resolve.  *Celotex Corp.*, 477 U.S. at 324.

### B.      Defamation

Under Illinois law,[4] a plaintiff alleging defamation must show that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages.  *See Solaia Technology, LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (2006).  "A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with her."  *Skolnick v. Correctional Medical Svcs., Inc.*, 132 F. Supp. 2d 1116, 1123 (N.D. Ill. 2001) (quoting *Bryson v. News America Pub., Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996).

---

[4]The parties have all cited Illinois law, so the court will also look to it as the applicable state law.

However, American Hardware and the Farrells argue that they are not liable for the allegedly defamatory statements identified in Reed and Freeman's counterclaims for several reasons. The reasons are as follows: (1) their statements fall under the fair comment privilege; (2) their statements fall under the qualified privilege; (3) the Farrells are not personally liable for defamatory statements attributable to American Hardware; (4) Timothy Farrell's statements were opinions protected under the First Amendment; and (5) Reed and Freeman are public figures and they cannot show that American Hardware and the Farrells acted with actual malice. Alternatively, American Hardware and Timothy Farrell argue that Reed and Freeman have failed to identify any evidence that several of the statements alleged were defamatory.

The court will address each argument in turn.

1.      **Fair Comment Privilege**
        **Individual Liability for Corporate Conduct**

American Hardware and the Farrells contend that their allegedly defamatory statements all fall under the fair comment privilege and, therefore, cannot be the subject of a claim of defamation. Under the fair comment privilege, persons who offer a fair and complete report (or a fair abridgement) of the contents of a judicial proceeding are not liable for any defamatory statements contained in the proceeding reported. *See Solaia Tech.*, 852 N.E.2d at 843. However, the privilege does not extend to persons who repeat the allegations of their own complaint. *See Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 254 F. Supp. 2d 985, 1001-02 (N.D. Ill. 2002).

Reed and Freeman argue that the privilege does not shield American Hardware's reporting of the contents of its own complaint, and does not shield the Farrells because they

participated in American Hardware's conduct. The court agrees that because American

Hardware filed the complaint, it is not shielded from liability under the fair comment privilege,

and therefore is not entitled to summary judgment based upon the fair comment privilege. *See*

*id.*

As for the Farrells, they argue that the self-conferral exception to the fair comment

privilege does not apply to them because the complaint was filed only by American Hardware,

not by them. But as officers of American Hardware, the Farrells are liable for any tortious

conduct of their corporation in which they participated.[5] *See People ex rel. Madigan v. Tang*,

805 N.E.2d 243, 284 (Ill. App. Ct. 2004). Reed and Freeman have presented evidence that the

Farrells participated in American Hardware's allegedly defamatory communications. For

instance, Michael Alberts, American Hardware's former director of trade events, stated that

William and Timothy Farrell enforced a "No Surprises" policy under which all communications,

including press releases and issues of *The Eagle* had to be reviewed and approved by them before

being released. In addition, in response to an interrogatory served on him by Reed, Timothy

Farrell stated that he had personally either reviewed or approved the press releases dated January

16, 2004, and March 4, 2004, and the special January/February 2004 issue of *The Eagle* before

they were released.

---

[5]The Farrells argue that to be liable for corporate conduct under Illinois law, they must not only have participated in the conduct, but also benefitted from it. But the Seventh Circuit has rejected the need for evidence of a heightened level of "active participation" in order to hold individuals liable for corporate conduct. *See Itofca, Inc. v. Hellhake*, 8 F.3d 1202, 1205 (7th Cir. 1993).

Accordingly, Reed and Freeman have identified evidence creating disputed questions of fact over whether the Farrells participated in allegedly defamatory communications by American Hardware. Because these disputed questions of fact must be resolved in order to determine whether the self-conferral exception applies to the Farrells, the Farrells are also not entitled to summary judgment on the issue of applicability of the fair comment privilege.

## 2.      Qualified Privilege

American Hardware and the Farrells contend that their communications are also protected under a qualified privilege. Under Illinois law, a defamatory statement is shielded by a qualified privilege if the speaker (1) made the statement in good faith, (2) had an interest or duty to uphold, (3) the statement was limited in scope to upholding that interest or duty, (4) the statement was made on a proper occasion, and (5) the statement was disseminated in a proper manner and only to the proper recipients. *Zych v. Tucker*, 844 N.E.2d 1004, 1008 (Ill. App. Ct. 2006). However, the privilege does not apply if the party making the statement abused the privilege which, under Illinois law, amounts to acting with actual malice or in a reckless manner in disregard of the rights of the party allegedly defamed. *See Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133, 135 (Ill. 1993). Whether a party has abused the qualified privilege is a question of fact. *See Achanzar v. Ravenswood Hosp.*, 762 N.E.2d 538, 543 (Ill. App. Ct. 2001).

The defendants contend that American Hardware and the Farrells abused the privilege, and therefore the privilege is inapplicable, because American Hardware acted at least recklessly if not with actual malice. They identify the following as evidence of American Hardware's reckless or malicious conduct: (1) testimony of former employee Alberts that the Farrells did not care whether the allegations of the complaint were true; (2) testimony of Charles Schwartz,

president of the trade show management company that American Hardware hired to replace

Reed, that American Hardware planned to "do whatever [it] could to discredit Reed" in order "to

kill the Reed show;" and (3) the sheer number of persons and entities to whom American

Hardware and the Farrells disseminated the complaint or described its allegations which,

according to the defendants, raise an inference that the counter-defendants did so to discredit

Reed and Freeman.

The defendants' reliance on Alberts' testimony that the Farrells did not care about the

truthfulness of their allegations is misplaced because, as discussed above, the testimony is

inadmissible opinion evidence. Likewise, reliance on Schwartz's purported testimony is

unavailing because the statement, as quoted in Statement of Additional Fact 135, [921-1], cannot

be found in Schwartz's deposition transcript as cited. *See Casna v. City of Loves Park*, 574 F.3d

420, 424 (7th Cir. 2009) (judges need not hunt through the record to find facts and arguments

supporting a party's position).

The court turns now to American Hardware's allegedly frequent and indiscriminate

dissemination of its complaint. Earlier, Reed and Freeman attempted to add allegations to their

counterclaim about American Hardware's dissemination of its complaint to numerous people in

addition to Airoldi and Ennis. *See* Freeman's Motion for Leave to Amend [815-1] and Reed's

Motion for Leave to Amend [818-1]. Judge Shadur denied the motion as untimely because

Freeman and Reed's motion to amend came too long after they first discovered the additional

disseminations. *See* Order Dated November 7, 2009 [825-1] and Transcript of November 7,

2009, hearing (attached as App. 161 to American Hardware's Response to Defendants'

Statement of Additional Facts [949-1]) at 27-28.

American Hardware now argues that Reed and Freeman's only evidence of indiscriminate distribution of its complaint to anyone other than Airoldi and Ennis consists of those distributions that Judge Shadur disallowed as untimely. However, even conduct that cannot serve as the basis of a claim because of timeliness concerns is nevertheless admissible when relevant to timely-filed claims. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (time-barred acts are allowed as evidence of timely claims). American Hardware and the Farrells have cited no authority to support their argument that such evidence should be barred under the circumstances presented here. *See Jarrad v. CDI Telecommunications, Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (undeveloped arguments unsupported by citations to authority are forfeited).

Alternatively, American Hardware argues that Reed and Freeman's assertions of other frequent distributions of the complaint are unsupported by admissible evidence. However, the court has carefully reviewed the relevant assertions of fact within Reed and Freeman's Statement of Additional Facts ¶ 160, [921-1], and found them to be supported by the cited evidence.

Accordingly, disputed questions of fact, including the extent of the dissemination of American Hardware's complaint and whether the disseminations constitute an abuse of the qualified privilege, preclude summary judgment on this issue and, therefore, American Hardware and the Farrells' motion is denied.

### 3.    Protected Opinions

Next, Timothy Farrell argues that several communications at issue are expressions of his opinion protected under the First Amendment. Expressions of opinion are protected by the First Amendment as long the opinion cannot be reasonably interpreted as stating an actual fact. *See*

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 534-35 (7th Cir. 2009). To determine whether a statement is factual (and therefore actionable defamation under Illinois law) or opinion (protected under the First Amendment), courts balance a variety of factors, including the following: (1) the precision of the statement; (2) the verifiability of the statement; (3) the context in which the statement was made. *Id.*; *Skolnick*, 132 F. Supp. 2d at 1125. Courts also take into account whether the impression that the statement is presenting facts is negated by the general tone of the context in which the statement appears, or by the speaker's use of overly loose, figurative, rhetorical, or hyperbolic language. *See Skolnick*, 132 F. Supp. 2d at 1125. Whether a statement is fact or opinion can be resolved as a question of law. *See Giant Screen Sports*, 553 F.3d at 535.

Timothy Farrell contends that the following three statements alleged to be defamatory are, in fact, protected opinion:

1. In a January 16, 2004, press release detailing the lawsuit American Hardware filed against Reed and Freeman, he was quoted as saying "Reed simply cannot compete at this level so it has resorted to illegal and unethical activity."

2. On January 18, 2004, after detailing the allegations of American Hardware's complaint, he allegedly told attendees of American Hardware's Executive Conference that "I've been asked if I think the lawsuit will affect their 2004 show, and my response was I think it will affect all of their shows. No one wants to work with a company who lies and cheats their partners and exhibitors."

3. In a May 28, 2004, email to hardware industry leaders, he referred to "Reed's (alleged at this point in our lawsuit against them which is attached for your reference) greed, and cheating of exhibitors."

A careful review of not only the quoted statements but also the larger context in which they were delivered, reveals that Farrell's statements were merely unactionable hyperbole. On

each occasion, Farrell's statement began as a description of the allegations in American Hardware's complaint, which led to his assessment of those allegations. In context, Farrell's statements that "Reed cannot compete at this level" and that "[n]o one wants to work" were not presented as verifiable statements of fact, but rather were merely Farrell's opinions about Reed and Freeman's motivations for engaging in the conduct alleged in the complaint, or his prognostications about the consequences to Reed and Freeman for engaging in the alleged conduct. While Farrell's statements were also accompanied by derogatory language such as "lies," "cheats," and "greed," in context the language was merely hyperbole Farrell employed when referring to the allegations of the complaint he had just detailed. *See Gardner v. Senior Living Sys., Inc.*, 731 N.E.2d 350, 355 (Ill. App. Ct. 2000) (use of word "unethical" could not be construed as stating facts rather than opinion); *Hopewell v. Vitullo*, 701 N.E.2d 99, 105 (Ill. App. Ct. 1998) (harsh statements are more likely substanceless rhetoric than assertions of fact).

Consequently, the statements identified above are merely expressions of opinion protected under the First Amendment, and therefore Timothy Farrell is entitled to summary judgment on the claims arising from those statements.

### 4.    Public Figure

Finally, American Hardware and the Farrells argue that they are entitled to summary judgment on all of the defamation claims because Reed and Freeman are limited public figures and because there is no evidence of actual malice. To prevail on a defamation claim, a public figure must establish that the allegedly defamatory statements were made with actual malice, that is, the public figure must show that (1) the statement was false, and (2) it was made with

knowledge of its falsity or in reckless disregard of whether it was false or true. *See Madison v. Frazier*, 539 F.3d 646, 657-58 (7th Cir. 2008).

A limited public figure is one who would otherwise be a private figure but who has thrust himself into a public controversy. *See Kessler v. Zekman*, 620 N.E.2d 1249, 1254-55 (Ill. App. Ct. 1993). In assessing whether a figure is a limited public figure, Illinois[6] courts look to whether (1) there is a public controversy, (2) the plaintiff played a meaningful role in the controversy, and (3) the allegedly defamatory story is germane to the plaintiff's role in the controversy. *Id.* at 1255. The plaintiff must have been a public figure *before* the allegedly defamatory statements occurred. *See Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 853 N.E.2d 770, 777 (Ill. App. Ct. 2006). A plaintiff's advertisements of its own goods or services does not make it a limited public figure. *Id.* The question of whether a figure is a limited public figure is a question of law. *See Harris v. Quadracci*, 48 F.3d 247, 250 n.5 (7th Cir. 1995).

The evidence identified by the counter-defendants falls short of establishing that Reed or Freeman were limited public figures. Although they have cited numerous published articles that address the issue of cost-shifting within the trade show industry, the articles all appear in trade show publications, such as TRADESHOW EXECUTIVE and TRADESHOW WEEK. Thus, the counter-defendants' evidence establishes only that the issue of cost-shifting was a controversy within the trade show industry, not the public at large. Therefore, the situation presented in the instant case

---

[6]"Whether a plaintiff is a 'public figure' or simply a private person is a question of federal constitutional law and Supreme Court rulings are controlling. Nevertheless, because the Supreme Court has not defined the precise contours of who constitutes a 'public figure' and because states are entitled to provide a broader, though no more constricted, meaning to 'public figures,' resort to [state] case law is appropriate . . ." *Harris v. Quadracci*, 48 F.3d 247, 250 n.5 (7th Cir. 1995).

stands in sharp contrast to the situation presented in the cases cited by the counter-defendants, where the controversy concerned the general public. *See, e.g., Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 273-74 (3d Cir. 1980) (controversy involving four-day sale of meat at Pittsburgh department store concerned consumers generally); *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F. Supp. 947, 957 (D.D.C. 1976) (controversy involving defense contractor concerned citizens and taxpayers generally).

The counter-defendants also attempt to rely on evidence that Reed and Freeman were successful and well-regarded within their fields, and that their 2001 Hardware Show was well publicized on every major television network. However this evidence also falls short of establishing that Reed and Freeman were limited public figures. Evidence that Reed and Freeman were well-regarded within the trade show industry does not establish that they were also well-regarded or well-known to the public, and the counter-defendants have cited no evidence of whether or not Reed and Freeman were well-known generally. *See Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1330 n.7 (5th Cir. 1993) ("a public figure must be known to the public at large," not merely within a trade industry). As for the publicity generated by the 2001 Hardware Show, the counter-defendants have identified no evidence that the network broadcasts focused on Reed and Freeman as opposed to the hardware show itself.

Accordingly, the counter-defendants have not met their burden of establishing, as a matter of law, that Reed and Freeman were limited public figures.

Moreover, even if the counter-defendants had established that Reed and Freeman were limited public figures, Reed and Freeman would nevertheless survive summary judgment because they have identified evidence of the counter-defendants' actual malice. Specifically, as

detailed above in the discussion of the qualified privilege, Reed and Freeman have identified evidence that the counter-defendants distributed American Hardware's complaint frequently and indiscriminately. Because of disputed questions of fact regarding the extent of these disseminations, Reed and Freeman may be able to establish actual malice and, therefore, may prevail on their defamation claims even if they are limited public figures.

For these reasons, the counter-defendants' motion for summary judgment on the basis that Reed and Freeman are limited public figures and the absence of evidence of actual malice is denied.

## 5.      Disputed Issues of Material Fact

Finally, American Hardware and Timothy Farrell argue that they are entitled to summary judgment regarding several allegedly defamatory statements because Reed and Freeman have failed to identify any evidence in the record that those statements were defamatory. The court turns now to the alleged defamatory statements.

### A.      Executive Conference

American Hardware and Timothy Farrell contend that Freeman lacks evidence that Farrell ever identified Freeman by name during his remarks on January 18, 2004, to attendees of American Hardware's Executive Conference and, therefore, Farrell's remarks could not have been defamatory towards Freeman. However, former director of trade events Michael Alberts attended the conference and states in a declaration that Farrell named Freeman during his remarks. Accordingly, record evidence supports the claim.

## B.    May 28, 2004, E-Mail

Next, American Hardware and Timothy Farrell contend that Reed and Freeman lack evidence that Farrell ever sent the May 28, 2004, e-mail in which he allegedly forwarded a copy of American Hardware's complaint to an industry leader.  But former executive assistant Patricia Koszycki has stated in a declaration that she remembers sending the e-mail for Farrell. Accordingly, record evidence supports the claim.

## C.    Chicago Sun-Times Article

Finally, American Hardware and Timothy Farrell contend that Freeman lacks evidence to support a defamation claim based upon an article published in the *Chicago Sun-Times*.  Freeman alleges that the *Chicago Sun-Times* article was libelous *per se* because in it, Farrell attributes the decline of the hardware show to Reed and Freeman's "corruption."  American Hardware and Farrell argue that they are entitled to summary judgment on the claim because (1) the article refers only to Reed's general contractor, not Freeman by name, and as a result under the innocent construction rule, Freeman could not have been defamed by the article, and (2) although the article describes Freeman as having engaged in "corruption," Farrell is not quoted as having used that word himself.

Under the innocent construction rule, a statement that can reasonably be interpreted innocently, or as referring to someone other than the plaintiff, is not actionable.  *See Tuite v. Corbitt*, 866 N.E.2d 114, 122 (Ill. 2006) ("'[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be

interpreted as referring to someone other than the plaintiff it cannot be actionable per se.'")

(quoting *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (1982)). Although the article does not

mention Freeman by name, the article could not be reasonably be interpreted as identifying any

contractor other than Freeman given that Freeman was the contractor Reed hired to conduct the

hardware show. Accordingly, the innocent construction rule does not shield American Hardware

and Farrell from liability.

However, as for the article's use of the word "corruption," Freeman has identified no

evidence that Farrell used that word with the reporter and, in fact, the word falls outside the

quotation marks used to identify Farrell's actual statement. Accordingly, there is no admissible

evidence in the record that Farrell used the word "corruption," and therefore American Hardware

and Timothy Farrell are entitled to summary judgment on the defamation claim arising from the

use of the word "corruption" in the *Chicago Sun-Times* article.

## CONCLUSION

For the reasons stated, the motions for summary judgment filed by William Farrell [836-

1] and American Hardware and Timothy Farrell [848-1] are granted in part and denied in part as

follows:

1.  the motion for summary judgment on the issue of the fair comment privilege is
    denied;

2.  the motion for summary judgment on the issue of the qualified privilege is denied;

3.  Timothy Farrell is granted summary judgment on the following claims of
    defamation because the statements at issue are protected opinions:

a. Farrell's statement in American Hardware's January 16, 2004, press release that "Reed simply cannot compete at this level so it has resorted to illegal and unethical activity."

b. Farrell's statement on January 18, 2004, to attendees of American Hardware's Executive Conference that "I've been asked if I think the lawsuit will affect their 2004 show, and my response was I think it will affect all of their shows. No one wants to work with a company who lies and cheats their partners and exhibitors."

c. Farrell's reference in his May 28, 2004, e-mail to hardware industry leaders to "Reed's (alleged at this point in our lawsuit against them which is attached for your reference) greed, and cheating of exhibitors."

4. the motion for summary judgment on the issue of Reed and Freeman being limited public figures is denied;

5. the motion for summary judgment on the basis that no evidence supports the defamation claims arising from Timothy Farrell's remarks to the Executive Conference on January 18, 2004, and his May 28, 2004, e-mail is denied; and

6. the motion for summary judgment on the defamation claim based upon the *Chicago Sun-Times* article is granted in part and denied in part as follows:

a. the motion for summary judgment on the basis of the innocent construction rule is denied; but

b. the motion for summary judgment on the defamation claim arising from the article's use of the word "corruption" is granted.

William Farrell's motion to strike the declarations of Patricia Koszycki and Michael Alberts is denied, except that Alberts' speculation about whether the Farrells cared if the allegations in American Hardware's complaint were true shall be disregarded.

Finally, Reed and Freeman's motion to submit additional authority [1061-1] is granted.

ENTER:

DATE: January 4, 2010

*Blanche M. Manning*

Blanche M. Manning

United States District Judge