# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, )<br>           Plaintiff, )<br>)<br>v. )<br>)<br>REED ELSEVIER, INC., *et al.*, )<br>           Defendants. ) | No. 03 CV 9421<br>Judge Blanche Manning |

## MEMORANDUM AND ORDER

The parties have filed numerous motions for summary judgment. This order addresses the motion filed by plaintiff American Hardware Manufacturers Association on the false advertising and trademark-related claims of its Second Amended Complaint against defendant Reed Elsevier Inc.

## BACKGROUND

As the court has detailed in other orders, for 25 years American Hardware and Reed jointly held an annual trade show for the hardware and home improvement industries. After the 2003 show, the parties severed their relationship and agreed to compete against each other by conducting their own, separate trade shows in 2004. The break-up was widely reported, and those in the industry expected only one of the two shows to survive.

American Hardware's claims against Reed stem from Reed's efforts to publicize its 2004 event. The following facts about Reed's conduct are undisputed except where noted.

### 1. Announcement of Buyers and Exhibitors

To help generate interest in its show, Reed conducted a news conference on August 10, 2003, at which Reed vice-president Robert Cappiello spoke. About a month later, industry trade

publication HOME CHANNEL NEWS reported on the news conference and quoted Cappiello as having announced that the first buyer to register to attend Reed's show was PRO Group, a prominent purchasing group. In fact, PRO Group had not registered to attend Reed's show and its president contacted Cappiello to complain about the article. In response, Cappiello contacted HOME NEWS CHANNEL and asked it to correct the article. HOME NEWS CHANNEL ran a correction in the October 6, 2003, edition of its publication, reporting that, according to Reed, the first buyer to register was not PRO Group, but rather was Distribution America, another prominent purchaser. However, the correction was also inaccurate because, like PRO Group, Distribution America had not registered to attend Reed's show.

In the meantime, Reed also attempted to raise interest in its show among hardware suppliers by making various announcements on its website and in other publications that General Tools and Great American Marketing would be exhibitors at its 2004 show. Reed contends that these statements were true when made because both General Tools and Great American had signed an "Application & License Agreement for Exhibition Participation" requesting space at Reed's 2004 show. However, American Hardware asserts that the applications were incomplete and did not commit General Tools or Great American to exhibit at Reed's show, and therefore Reed's references to General Tools and Great American as exhibitors were false.

### 2. Use of American Hardware's Marks

In addition to allegations of false advertising, American Hardware contends that Reed used its INTERNATIONAL HARDWARE WEEK and AMERICAN HARDWARE MANUFACTURERS ASSOCIATION service marks while promoting Reed's 2004 show. Specifically, American Hardware contends that Reed used the marks (1) on a website that touted

Reed's 2004 show as being held in conjunction with International Hardware Week, and (2) in a magazine entitled "Data Book 2004," again touting Reed's 2004 show as being held in conjunction with International Hardware Week as well as being sponsored by American Hardware. Reed admits that the marks appeared as alleged, but asserts that the use was inadvertent, occurred in a publication and on a website not aimed at those in the hardware industry, and would not have led to confusion because Reed's split with American Hardware was widely reported within the hardware industry.

## ANALYSIS

As a result of Reed's allegedly false statements and misuse of American Hardware's marks, American Hardware sued Reed for, among other things, (1) false advertising under the Lanham Act (Count VII) based upon statements that (a) PRO Group, Inc. and Distribution America had been first to register to attend Reed's show, and (b) General Tools and Great American had been among the first to sign up to exhibit at Reed's show, and (2) trademark violations and unfair competition under the Lanham Act (Count VIII) and Illinois common law (Counts IX and X) based upon use of the INTERNATIONAL HARDWARE WEEK and AMERICAN HARDWARE MANUFACTURERS ASSOCIATION marks.

American Hardware now seeks summary judgment on its false advertising, unfair competition, and trademark violation claims against Reed, arguing that the undisputed facts establish that Reed violated both the Lanham Act and Illinois common law.[1]

---

[1] In an order issued contemporaneously with this one, the court held that American Hardware released Reed from liability for all conduct that occurred before February 26, 2003. *See* Memorandum and Order dated January 4, 2010 [1096-1] at 13. The release does not affect the viability of the claims at issue here, though, because the conduct post-dates the effective date of the release.

## I. Summary Judgment Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c). The court construes all of the facts and the reasonable inferences drawn from those facts in favor of the nonmovant, Reed. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008). Reed, however, may not merely rest upon the allegations or details in its pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. False Advertising Claim Under the Lanham Act (Count VII)

To establish a claim of false advertising under the Lanham Act, American Hardware must prove that (1) Reed made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material in that it is likely to influence a purchasing decision; (4) Reed caused the false statement to enter interstate commerce; and (5) American Hardware has been or will likely be injured by the false statement. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). To succeed on its motion for summary judgment, American Hardware must show that there is no disputed question of fact concerning any of the evidence it has offered on each of the required elements of its claims. *See Celotex*, 477 U.S. at 322. For the reasons stated below, American Hardware's evidence is not undisputed, and it is therefore not entitled to summary judgment on its false advertising claim.

A. **PRO Group**

American Hardware's evidence that Reed falsely named PRO Group as the first attendee to register for its 2004 show is testimony from the deposition of Reed vice-president Cappiello, during which Cappiello stated, "I did mention at the time mistakenly that the first two people who signed up were from PRO Group." Reed's Local Rule 56.1(a)(3) Statements of Fact (R.853), Ex. 31 at 303-04. However, Reed has created a disputed question of fact by citing testimony later in the deposition during which Cappiello recalled the complaint he received from PRO Group's president about the HOME NEWS CHANNEL article, as well as his response to the complaint:

> What I — well, I remember when I looked at the article that it wasn't PRO Group, because I remember seeing the DA logo on the polo shirt. So I said — I don't believe I said PRO Group, although it was the end of the day, you're tired, all kinds of things.

*Id.* at 305.

Reed contends that Cappiello's statement that he did not recall naming PRO Group corrects his earlier statement that he remembered naming PRO Group. American Hardware interprets the testimony differently, arguing that Cappiello's second quoted statement merely recalls the excuse he gave PRO Group when PRO Group confronted him about his misstatement.

The court has reviewed each portion of deposition testimony in context and cannot conclude that Reed's interpretation is implausible as a matter of law. Moreover, on a motion for summary judgment the court must construe all of the facts and the reasonable inferences drawn from those facts in favor of Reed. *See Warren*, 516 F.3d at 629. Accordingly, American

Hardware's evidence that Cappiello falsely identified PRO Group during the news conference is not undisputed.

B.     **Distribution America**

It is undisputed that HOME NEWS CHANNEL followed up its original report that PRO Group was the first to register to attend Reed's 2004 show by publishing a correction in which it reported that Reed had identified Distribution America as the first to register. However, American Hardware appears to concede that there is a dispute over exactly what Cappiello told HOME NEWS CHANNEL: American Hardware asserts (without citing any evidence in support) that Cappiello "made a false statement that Distribution America was the first to sign up for Reed's 2004 Las Vegas show," while Cappiello testified at his deposition, he merely told the publication that the first attendee was "DA." The statement Cappiello purports he gave would not have been literally false because an entity named "DA Sales & Service" was indeed among the first to register in August 2003.

Despite the dispute over what Cappiello told HOME NEWS CHANNEL, American Hardware contends that it is nevertheless entitled to summary judgment because even if Cappiello's statement was not literally false, it was misleading. Specifically, American Hardware contends that in the hardware industry, DA is generally understood to mean Distribution America. Therefore, American Hardware argues, even if Cappiello merely referred to "DA," Reed nevertheless engaged in false advertising because anyone in the hardware industry would have been misled into believing that Cappiello was referring to Distribution America.

A statement that is not literally false constitutes false advertising under the Lanham Act only if it is (1) misleading, and (2) resulted in actual confusion among consumers. *See Hot Wax*,

191 F.3d at 820. However, American Hardware has cited no evidence of actual consumer confusion. Its only evidence of confusion is confusion on the part of the HOME NEWS CHANNEL reporter who assumed DA meant Distribution America, not confusion on the part of industry members who consume the services offered by American Hardware and Reed—hardware trade show buyers and suppliers. *See Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 908 (7th Cir 2007) (actual confusion over advertisements for a movie is measured by looking to those who attended the movie). Given American Hardware's lack of evidence of confusion among hardware tradeshow consumers, it has failed to carry its burden of identifying evidence of actual confusion.

### C. Great American and General Tools

Reed printed the names of exhibitors for its 2004 hardware show on its website. Two of the exhibitors it identified were Great American and General Tools. Reed also reported elsewhere on its website that General Tools had "signed up" for its 2004 show, and reported in a publication it owns, TRADESHOW WEEK, that General Tools "has indicated it will exhibit" at Reed's 2004 show. American Hardware argues that it is undisputed that Reed's conduct constituted false advertising because both Great American and General Tools publicly denied having signed up to exhibit at Reed's 2004 show at the time Reed identified them as exhibitors.

American Hardware's argument is unavailing. Reed has identified evidence that creates a disputed issue of fact of whether Great American and General Tools had signed up to exhibit at Reed's 2004 show. Specifically, Reed has provided three copies of its "Application and License Agreement for Exhibition Participation" form, two purportedly signed by General Tools and one purportedly signed by Great American. Reed's Responses to American Hardware's Rule

56.1(a)(3) Statements (R.911), Exs., 7, 16, 20.  On the applications, Great American and General Tools each checked the box next to the statement:  "I want my company name & logo to appear on the show website for FREE."  (*Id.*, Exs., 7 & 16.)

American Hardware argues that the applications are "inadmissible" because they are "incomplete or otherwise unauthenticated."  Reply (R.951) at 8.  In fact, the applications have been authenticated by David Tobin, who stated in his affidavit that he supervised the handling of both the Great American and General Tools accounts in connection with Reed's 2004 hardware show, and that the applications are true and accurate copies of the applications signed by Great American and General Tools.  Reed's Responses to American Hardware's Rule 56.1(a)(3) Statements, Ex. 135 at 1, 4, 11, 13.  As for American Hardware's argument that the applications are incomplete, that is relevant merely to the application's terms and whether they can be enforced—American Hardware has cited no Federal Rule of Evidence that would render a purported agreement between parties inadmissible because it is incomplete.

Alternatively, American Hardware argues that even if the signed applications are admissible, they are not evidence of an agreement by Great American and General Tools to exhibit at Reed's 2004 show because no money changed hands.  But there is no assertion in the allegedly fraudulent statements that money changed hands or that irrevocable commitments had been entered into.  Rather, the statements were merely that General Tools had "signed up for" and "has indicated" that it would exhibit at Reed's 2004 show.  As for the inclusion of Great American and General Tools in the list of exhibitors identified on Reed's website, the applications signed by Great American and General Tools explicitly directed Reed to include their names on its website.  Thus, the applications support Reed's position that the statements

attributed to it were neither literally false nor misleading. For that reason, the question of whether the statements constituted false advertising is disputed, precluding the grant of summary judgment.

### III.   Trademark Infringement & Unfair Competition Claims Under the Lanham Act (Count VIII) and Illinois Common Law (Counts IX & X)

To establish a claim of either trademark infringement or unfair competition under the Lanham Act, American Hardware must show that (1) its mark is entitled to protection, and (2) others' use of the allegedly infringing mark is likely to cause confusion. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001). Likelihood of confusion is gauged by the court's consideration of the following factors: (a) the strength of the protected mark; (b) the similarity between the marks; (c) the similarity of the parties' products; (d) the area and manner of concurrent use; (e) the degree of care likely to be exercised by consumers; (f) actual confusion; and (g) any intent by the defendant to palm off his product as the product of another. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

Claims of trademark infringement and unfair competition under Illinois law are established in the same manner as claims under the Lanham Act. *See World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 841 (N.D. Ill. 2002).

The court's analysis begins and ends with likelihood of confusion. American Hardware asserts that all of the evidence in the record supports the conclusion that Reed engaged in trademark infringement and unfair competition, and that it is therefore entitled to summary judgment on those claims. However, contrary to American Hardware's assertion, Reed has identified evidence supporting a conclusion that no infringement or unfair competition occurred.

For instance, Reed has identified evidence that its split with American Hardware was widely reported, and that it was commonly known within the hardware industry that American Hardware and Reed were staging separate, competing shows in 2004.  *See, e.g.,* Reed's Local Rule 56.1(b)(3)(c) Statements [952-1] ¶¶ 55-58.  Such evidence would undermine a finding that Reed's use of American Hardware's mark was likely to confuse those within the hardware industry into thinking that Reed was conducting its 2004 show in conjunction with American Hardware.

Reed has also identified evidence that the website and publication in which it continued to use American Hardware's marks were aimed at those who stage tradeshows generally, not those within the hardware industry.  Because the marks' use was not aimed at the hardware industry, jurors would be entitled to find that Reed's use of the marks did not contribute to confusion within the hardware industry.

Moreover, American Hardware has also failed to cite evidence to support its assertion that Reed intended to palm off its 2004 show in Las Vegas as being the same as American Hardware's 2004 show in Chicago.  To the contrary, Reed's marketing materials aimed at those within the hardware industry explicitly distinguished its 2004 show in Las Vegas from American Hardware's 2004 show in Chicago.  *See id.*  Indeed, American Hardware does not dispute Reed's assertion that its promotional efforts were designed to "distance its show from any affiliation with [American Hardware]." *Id.* at ¶ 50.

Accordingly, disputed questions of fact exist over whether Reed's use of American Hardware's marks were inadvertent and whether their use would have likely confused those in the hardware industry.  Because these disputed questions of fact concern factors that are critical

to determining whether Reed's conduct constituted trademark infringement or unfair competition, American Hardware is not entitled to summary judgment on its trademark infringement and unfair competition claims.

## CONCLUSION

For the reasons stated, American Hardware's motion for summary judgment [851-1] on its claims of false advertising (Count VII) and trademark infringement / unfair competition (Counts VIII - X) are denied.

ENTER:

DATE: January 4, 2010

_Blanche M. Manning_
Blanche M. Manning
United States District Judge