# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9421 | **DATE** | 12/30/2010 |
| **CASE TITLE** | Am. Hardware Mfrs. Assn. vs. Reed Elsevier, Inc. | | |

**DOCKET ENTRY TEXT**

The Court grants plaintiff and counterdefendants' motions *in limine* in part, denies them in part, and defers ruling in part as set forth below.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

The Court rules as follows on the motions *in limine* filed by AHMA and the Farrells (collectively AHMA):

1. The Court denies in part AHMA's motion to bar the testimony of Reed Elsevier's home improvement experts Frederick Miller and Curt Powell. AHMA's arguments largely involve taking issue with Miller and Powell's conclusions and rationale. This may be good fodder for cross-examination, but it is not a basis for exclusion. Both Miller and Powell are sufficiently qualified to give opinion testimony on the topics in question. And their testimony, much like that of AHMA's expert on the same topic, is relevant, sufficiently reliable, and not unduly confusing.

AHMA's argument regarding duplication has more punch. It appears to the Court that the testimony of Miller and Powell overlaps and is largely or perhaps entirely duplicative. Despite AHMA's argument to this effect, Reed has made no attempt to show that their testimony is not duplicative – other than to say in a footnote, in an entirely conclusory and unsupported way, that it will not offer testimony from both on the same topic or issue. Def.'s Resp. to Pl.'s Mot. in Limine at 7 n.9. Pursuant to Rule 403 and N.D. Ill. LR Form 16.1.1, note 7, the Court precludes duplicative testimony from these witnesses. If Reed intends to call both, it would be well advised, from a strategic standpoint, to call first the one it considers more persuasive, because there is a good chance the second will not be permitted to testify.

2. AHMA seeks to bar the testimony of Barry Epstein, an accounting expert witness for Reed.

   a. In a later section of this order, the Court precludes admission of evidence regarding the compensation of the Farrells, except for a limited purpose (the amount of punitive damages) that will be bifurcated from all other issues in the case. The Court assumes for present purposes that if the trial reaches that point, Reed still would call Epstein to testify regarding the compensation comparison summary he

prepared. Based on the description of the summary provided by Reed, it will not be admissible for the purpose of determining what amount of punitive damages to award to Reed against the Farrells on Reed's defamation counterclaim. What likely would be relevant in that regard is the Farrells' current or relatively current financial condition, not the entire history of their compensation "for a combined total of thirty-two years," which is what Reed wants to introduce. *See* Def.'s Resp. to Pl.'s Mot. in Limine at 10. Thus the Court excludes the compensation summary in its current form. If Reed wishes to offer at the amount-of-punitive-damages phase of the trial evidence that hits closer to the mark given the Court's relevance ruling, Reed must describe this narrower evidence to counsel for AHMA and the Farrells, in detail and in writing, no later than two business days before the final pretrial conference. If AHMA challenges the admission of the narrower version of the compensation evidence, it should raise the point with the Court at the final pretrial conference.

      b.     AHMA asks the Court to bar opinion testimony by Epstein regarding AHMA's alleged damages. The Court agrees with Reed that Epstein has sufficient qualifications to render an opinion regarding the profits Reed and AHMA would have shared were one to assume they were engaged in a joint venture. He may also render an opinion regarding whether AHMA's accounting treatment of its transactions and dealings with Reed is consistent with how one would account for those matters in a joint venture or if a party (AHMA) had an ownership interest in the hardware show. These topics are squarely within Epstein's accounting expertise.

      c.     Epstein may not, however, render any opinion regarding whether AHMA and Reed were engaged in a joint venture, and he may not provide interpretations of the 1977 show agreement. These are not appropriate topics for expert testimony, and even if they were, Epstein (a CPA) lacks the necessary qualifications to render opinions on these points. It also appears from Reed's response to AHMA's motion that Reed intends to elicit from Epstein that provisions of the 1977 agreement "corroborate Epstein's view that Reed's and AHMA's accounting was inconsistent with AHMA's theory that it owned the Show or that the Show was a joint venture." Def.'s Resp. to Pl.'s Mot. in Limine at 16. The Court precludes such testimony; it inappropriately strays over the line that the Court has set barring Epstein from interpreting the agreement.

      d.     AHMA argues that Epstein should not be permitted to render an opinion regarding why Reed accounted for contractors' commissions in a particular way. Epstein's opinion on this topic is based on discussions he had with various Reed personnel and review of documents. The Court is unpersuaded that opining on why an entity chose to account for transactions in a particular way falls within Epstein's area of expertise. In addition, the Court concludes that opinion testimony on this topic will not assist the jury in a meaningful way, *see* Fed. R. Evid. 702, because it involves a task – assessing statements by witnesses – on which a jury does not require "expert" assistance. For this reason, the Court need not address AHMA's argument that Epstein's report failed to comply with Rule 26(a)(2) on this point.

3.     AHMA asks the Court to bar the testimony of Cordell Overgaard, who was outside counsel for Reed's predecessor, Cahners Publishing Company, when the 1977 show agreement was negotiated and executed. Reed intends to call Overgaard to testify regarding the negotiation of and intent behind the agreement. Reed separately moved to preclude extrinsic evidence regarding the agreement, but AHMA objected, arguing among other things that Reed was in effect making an untimely motion for summary judgment. The Court agreed with AHMA on that point and thus denied Reed's motion, without prejudice to a Rule 50 motion at an appropriate point during the trial. The upshot is that Reed, like AHMA, will be permitted to offer extrinsic evidence at the trial. (If AHMA does not actually intend to offer any extrinsic evidence, it may wish to

reconsider its objection to Reed's motion, which would obviate the dispute regarding Overgaard's testimony.)

With regard to Overgaard, AHMA argues that he disclosed privileged information during his deposition regarding his communications with Cahners personnel regarding the negotiation of the 1977 agreement. AHMA contends that Reed nonetheless blocked AHMA from questioning Overgaard and others and obtaining written discovery regarding those same points. AHMA argues that Reed should not be allowed to have it both ways and that the Court should preclude it from offering Overgaard's testimony.

In response, Reed argues that the matters Overgaard disclosed involved business negotiations, not legal advice, and that he disclosed nothing protected by the attorney-client privilege. It also argues that even if Overgaard disclosed privileged material, that waiver was not broad enough to cover the points on which Reed objected at the depositions of its general counsel and deputy general counsel, who came on the scene years later and had no involvement in the negotiation of the 1977 agreement.

The Court directs AHMA to file a written reply on the Overgaard issue by the close of business on 1/5/11.

4.  The Court defers ruling on AHMA's motion to preclude Reed from introducing evidence of damages on its defamation counterclaim. Reed says it provided the amounts and categories as part of the process of preparing the final pretrial order. But discovery had long been closed at that point. Reed unquestionably failed to comply with the requirements of Rule 26(a)(1)(A)(iii) by failing to provide, during the period when discovery was open, information detailing its claimed actual damages – in particular, amounts it claims to have paid to public relations firms to respond to the alleged defamation. It is no answer to this to say, as Reed does in response to the motion, that AHMA was aware that Reed had hired a PR firm and asked questions about this during discovery but never asked about the amounts paid. It was Reed's obligation to disclose this information "without awaiting a discovery request," Fed. R. Civ. P. 26(a)(1)(A), not AHMA's obligation to ferret it out despite Reed's non-compliance.

That said, exclusion of evidence based on noncompliance with Rule 26(a)(1) is not required under Rule 37(c) if the nondisclosure was substantially justified or harmless. Reed has offered no legitimate justification, so the issue is what harm, if any, AHMA suffered. The Court directs AHMA to file a reply on this particular point, not to exceed 3 pages, by no later than 1/4/11. AHMA must include in its reply a specific description of what discovery, if any, it would need prior to trial to cure the harm. The odds are that rather than excluding Reed's evidence, the Court will order that whatever discovery it finds AHMA reasonably needs will proceed on a highly expedited basis prior to trial at Reed's expense.

5.  The Court requires further argument regarding whether Reed should be barred from introducing statements on various topics made by three deceased former executives of Reed's predecessor Cahners Publishing Company.

The Court rejects Reed's argument, made only in a footnote without any support, that these statements should be admitted under the residual hearsay exception, Federal Rule of Evidence 807. *See* Def.'s Resp. to Pl.'s Mot. in Limine at 27 n.18. Reed has failed to offer any argument that would support a finding, essential to admissibility under Rule 807, that these statements have "circumstantial guarantees of trustworthiness" equivalent to statements covered by the hearsay exceptions in Rules 803 and 804. *See* Fed. R. Evid. 807. The proposition that the statements were made long ago makes them trustworthy – the only argument Reed makes in its footnote – borders on the ludicrous. Nor has Reed offered any argument that would support a finding, likewise essential to admissibility under Rule 807, that the statements are "more probative on the

point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." *Id.*

The Court also rejects Reed's argument that these statements are admissible to prove simply that the statements were made. That fact, by itself, is of no consequence in this case. And the statements likewise are not the sort of out-of-court statements that have "independent legal significance" that makes such statements admissible if relevant because they are not hearsay.

All of that said, however, Reed's response to AHMA's motion suggests that the statements, or some of them, may be admissible to show the state of mind of Reed and/or its personnel at some relevant time. AHMA should be prepared to address this point at the final pretrial conference. AHMA should also be prepared to address Reed's argument that certain statements by Robert Krakoff are admissible to show that AHMA was on notice of various matters. *See* Def.'s Resp. to Pl.'s Mot. in Limine at 30.

6.  AHMA asks the Court to exclude from the courtroom all witnesses other than a single representative of each corporate party (AHMA and Reed) and the two individual counterdefendants (William Farrell and Timothy Farrell). Reed asks the Court to permit its general counsel Julie Goldweitz to be present in addition to another corporate representative. Reed has not shown that Goldweitz's presence in the courtroom during the trial is "essential to the presentation of [Reed's] cause," as required by the rule on which Reed relies. *See* Fed. R. Evid. 615. The fact that Goldweitz is responsible for the undeniably important task of keeping Reed and related entities apprised of the progress of the litigation has little if anything to do with the presentation of Reed's case to the jury. The fact that she is a fact witness regarding a significant event in February 2003 does not make her presence in the courtroom throughout the trial any more "essential" than any other fact witness.

All of that said, however, the Court is hard-pressed to see how AHMA possibly could be prejudiced by Goldweitz's presence during the trial. She attended numerous depositions during the case, apparently without objection by AHMA. For this reason, the Court grants the motion to exclude but will allow Goldweitz to remain present during the trial along with Reed's other corporate representative. If it becomes apparent that Goldweitz's presence during the trial has affected her in-court testimony, the Court will consider permitting AHMA to argue that point to the jury. In addition, Goldweitz, like all others present in the courtroom, will be subject to the bar against discussing any witness's testimony with another witness.

7.  AHMA seeks to bar evidence regarding the state of its finances and the finances of the Farrells, who are co-defendants with AHMA on Reed's defamation counterclaim. Reed argues that the evidence is relevant to show Reed's motive for filing the lawsuit. Specifically, Reed's contention is that the Farrells caused AHMA to file the suit to "maintain[ ] rich financial perks to which they were accustomed." Def.'s Resp. to Pl.'s Mot. in Limine 34. Reed cites no authority for the proposition that the Farrells' and AHMA's motive for filing suit is relevant, and the Court is unpersuaded of the relevance of this evidence. It goes without saying that AHMA filed the suit hoping to obtain a great deal of money, and that fact by itself allows Reed to make whatever "motive" arguments might be appropriate. The fact (assuming it is a fact) that the Farrells were or are well compensated adds nothing of consequence other than to unfairly prejudice them before the jury, in a way that would far exceed any conceivable probative value the evidence might have.

The Court is also unpersuaded by Reed's argument that evidence regarding the Farrell's finances is relevant because they have asserted "business judgment" and "fair comment" defenses to the defamation claim. Though it may be true, as Reed argues, that the business judgment rule protects corporate directors only if they act without corrupt motive and in good faith, the Court fails to see how that puts at issue, as Reed

contends, the amounts of the Farrells' compensation. As for AHMA's finances, it will be obvious to the jury that AHMA stood to lose money if their hardware show failed and Reed's succeeded, and this will allow Reed to make whatever "motive" arguments might be appropriate.

Reed also contends that the Farrells' compensation is relevant because it will allow Reed to argue that it was their supposedly outsized compensation, rather than Reed's conduct, that caused or contributed to a decline in AHMA's hardware show. Reed cites no admissible evidence, however, that would support such a contention – it offers only a newspaper article that describes dissatisfaction among AHMA members, some of it concerning the Farrells' compensation. Because Reed identifies no admissible evidence tending to support the nexus that it claims, its argument provides no basis for a finding the compensation / finances evidence is relevant.

In sum, except as noted below, evidence regarding the compensation or finances of AHMA and the Farrells has no relevance to any of the claims or counterclaims, and its introduction would be highly and unfairly prejudicial and inflammatory in a way that far exceeds any minuscule probative value the evidence might have.

Reed identifies only one purpose for which evidence of the Farrells' and AHMA's finances is potentially relevant – specifically, to determine the amount of punitive damages on Reed's defamation counterclaim. The Court will allow admission of the evidence for that purpose. However, to avoid the enormous unfair prejudice that this evidence likely would cause to AHMA and the Farrells with regard to the issues of liability, compensatory damages, and the availability (as opposed to amount) of punitive damages, the Court will bifurcate from the remaining issues the question of the amount of punitive damages to award to Reed on its counterclaim. That issue will be reached if and only if Reed prevails on the counterclaim and the jury determines to award punitive damages. In that event, the trial will resume for the brief period necessary to allow admission of financial (and any other) evidence relevant only to the issue of the amount of punitive damages and to allow each side to argue that issue to the jury. Each side will be required to reserve from its allocated trial time the time needed to present evidence and argument on that issue; in other words, no extra time will be allotted.